Lawrence Drake, Appellant, v. Mary Hopeton Drake et al., Respondents.

Generally and in the absence of any indication of a contrary intention, the word "issue" in a devise includes in its meaning all descendants.

Where a power is given to a donee to appoint property to "all, any or either" of several persons named, or to all, any or either of their lawful issue, the word "or," in the absence of any indication of a contrary intent, has a discretionary, not a substitutional, import.

The will of D. gave to M., his adopted daughter, certain real estate for life; in case of her death "without leaving lawful issue," the testator gave to her power to devise or appoint by will the said real estate "to all or any or either" of his three sisters named, "or to all or any or either of the lawful issue" of said sisters "in such shares and proportion as she may think proper." In default of such devise or appointment, the testator devised said real estate to his said sisters in equal proportion on the death of M.; in case either of them died before M., "leaving lawful issue," the will provided that said issue should "take the share or part thereof which the parents of such issue would have taken if she had survived." The will contained a number of other devises, each to a beneficiary for life with remainder over to their "lawful issue," to be divided equally between them, if of equal degree of consanguinity, if not, the issue to take the share the parent would have

been entitled to if living. All of the sisters died during the life-time of M., two of them leaving children and grandchildren. M. died without issue, leaving a will appointing a portion of the said real estate to four of the said grandchildren, whose parents were then living, and the balance to children of the deceased sisters. In an action to determine the validity of the appointment to the grandchildren and to obtain a construction of the will of D., *held* (FOLLETT, Ch. J., HAIGHT and BROWN, JJ., dissenting), that the words "lawful issue" in the provision creating the power were not limited to the children of said sisters, but included the grandchildren; that conceding the same words as used in the devise over in case of a failure to appoint, embraced the children only, this did not control their interpretation as used in the grant of the power, and there was nothing in the context to restrict or qualify them as so used; and that, therefore, the appointment was valid.

*Palmer* v. *Horn* (84 N. Y. 516), distinguished.

Reported below, 56 Hun, 590.

(Argued April 26, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 16, 1890, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

On May 24, 1871, James Drake died at the city of New York, seized in fee of eleven houses and lots in that city, which were a part of a large estate left by him. He left him surviving three sisters, Susan A. Drake, Sarah A. Lawrence and Mary M. Keese, his only heirs; he left a will at the date of which and at the time of his death, Susan A. Drake had seven children and Sarah A. Lawrence three children then living, and two grandchildren; Mary M. Keese had no descendants then living. The testator also left Mary Hopeton Drake, a natural daughter, whom he had adopted, and who had resided with him for several years. By the seventh clause of his will he devised the eleven houses and lots mentioned to Mary Hopeton Drake for life, and conferred upon her the power, in case she died leaving lawful issue, to appoint, by her will, these houses to all or any or either of such issue, and in case of her death without an appointment, the lots were devised to her lawful issue.

Then follows this clause:

"*Ninth.* In the case of the death of the said Mary Hopeton Drake, without leaving lawful issue surviving at the time of her decease, then, and in such case, I give and devise to her full power and authority to devise or appoint, by her last will and testament, or other instrument hereinafter mentioned, the said eleven dwelling-houses and lots of land herein last above mentioned, and each and every of them, to all or any, or either of my sisters, Susan Ann Drake, Sarah Ann Lawrence and Mary M. Keese, or to all or any or either of the lawful issue of my said sisters, from and after the death of the said Mary Hopeton Drake, forever thereafter, and in such shares and proportions as she may think proper, and in such case I hereby give and devise the same in accordance with such devise or appointment, and in default of said last mentioned devise and appointment on the death of the said Mary Hopeton Drake without leaving lawful issue her surviving, I hereby give and devise the said last mentioned eleven dwelling-houses and lots of land to my sisters above named, and to their heirs and assigns, from and after the death of the said Mary Hopeton Drake, forever, to be divided among my said sisters in equal shares; and in case of the death of any or either of my said sisters during the life-time of the said Mary Hopeton Drake, leaving lawful issue, and then in such case last mentioned the said issue of each one so dying shall take the share or part thereof which the parent of such issue would have taken if she had survived."

Mary Hopeton Drake took possession of the realty devised to her and continued in possession thereof until June 24, 1884, when she died without issue. During her life-time the three sisters of James Drake died. Mary M. Keese left no issue. Susan A. Drake left seven children and one grandchild.

Sarah A. Lawrence left three children and a number of grandchildren.

Mary Hopeton Drake left a will dated May 19, 1880, and a codicil dated June 21, 1881, which were admitted to probate September 1, 1884. In her will she attempted to execute the

power of appointment in respect to the eleven houses and lots. She appointed that four of the grandchildren of Susan A. Drake and Sarah A. Lawrence should take seven of the houses and lots. The remainder of the houses and lots were appointed to the children of Susan A. Drake and Sarah A. Lawrence, the validity of which appointment is not questioned.

When Mary Hopeton Drake died the parents of the four infants to whom appointments were made were living.

*Joseph H. Choate* and *Wm. V. Rowe* for appellants.

*James C. Carter* for respondents.

BRADLEY, J. The question is whether or not the power of appointment which Mary Hopeton Drake assumed as she did by her will to execute, was within that created by the will of James Drake, and that depends upon the meaning to which the words "lawful issue," contained in the provision in that respect, in their relation and application to such power so given by him to her are entitled. By the seventh clause of his will James Drake devised to her eleven houses and lots in the city of New York for and during the term of her natural life. And by the eighth clause, in case she should have lawful issue surviving at the time of her decease, he granted to her power to devise or appoint by her will the eleven houses and lots to all or any or either of such issue, as she might in her discretion think proper, and in that case he devised accordingly, and in default of making such appointment he devised the houses and lots to her lawful issue from and after the time of her death, and if such issue should consist of more than one person and be of equal degree of consanguinity, the property should be divided among them in equal shares, and if of unequal degrees of consanguinity, then the issue of any deceased parent should take the share the parent would have taken if he had been surviving. By the ninth clause, in case of her death without having lawful issue, the testator gave and devised to Mary Hopeton Drake "full power and authority to devise or appoint by her last will and testament or other

instrument   *   *   *   the said eleven houses and lots of land herein last mentioned, and each and every of them to all or any or either of my sisters, Susan Ann Drake, Sarah Ann Lawrence and Mary M. Keese, or to all or any or either of the lawful issue of my said sisters from and after the death of the said Mary Hopeton Drake forever thereafter, and in such shares and proportions as she may think proper, and in such case I give and devise the same in accordance with such devise or appointment."

Mary Hopeton Drake died without issue and left her will, by which, in execution of the power of appointment, she devised the houses and lots in specified shares to some of the children and grandchildren named by her, of Susan Ann Drake and Sarah Ann Lawrence, two of the sisters before mentioned of James Drake. The other sister, Mary M. Keese, died without issue before the will of Mary Hopeton Drake was executed. Susan Ann Drake had before then also died, and Susan Ann Lawrence, then living, did not survive Mary Hopeton Drake, who was survived by the sisters' children, who were the parents of the grandchildren in whose behalf the power of appointment was executed by her.

The main proposition urged in support of the action and for the relief sought by it, is that the issue of the sisters could take as objects of the power only in a representative capacity and substitutionally, and, therefore, the appointment to the grandchildren was not permitted, as their parents, the children of the sisters, were living. The question may be considered in the light furnished, so far as it may be by the context or by the other provisions of the will of James Drake, and such circumstances as may legitimately bear in that direction, to determine the purpose of the power so far as it is dependent upon the import of the words "lawful issue," in the sense which they were there used in relation to such power. In its general sense, unconfined by any indication or intention to the contrary, the word "issue" includes in its meaning all descendants. (*Leigh* v. *Norbury*, 13 Ves. 340; *Tier* v. *Pennell*, 1 Edw. Ch. 354; 2 Wash. R. P. 318; *Re Corrie*, 32 Beav. 426; *Re*

*Kavenaugh*, 13 Jr. Ch. 120; *Dodsworth* v. *Addy*, 11 L. J. [N. S. Ch.] 382.) It may, however, when such appears to have been the intent with which the word is used, have the restricted import of children. It has been so construed where there was a certain collocation of words " parent" and "issue" in a bequest or devise, to the effect that the issue should take the share the parent would, if living, have taken. (*Sibley* v. *Perry*, 7 Ves. 522.) While that case has been so criticised or limited as not to be treated as establishing a general rule, the proposition is not questioned that in such case in bequests and devises the issue take substitutionally. (*Ralph* v. *Carrick*, L. R. (11 Ch. Div.) 873; 32 Moak, 856; *Pruen* v. *Osborne*, 11 Sim. 132; *Ross* v. *Ross*, 20 Beav. 645; *Robinson* v. *Sykes*, 23 id. 40; *King* v. *Savage*, 121 Mass. 303; *Jackson* v. *Jackson*, 153 id. 374; *Parkhurst* v. *Harrower*, 142 Penn. St. 432.)

The word "issue" may be a word either of purchase or limitation, and will be construed the one or the other as may be necessary to effectuate the intent with which it appears to have been used in the instrument where it is employed. (*Doe* v. *Collis*, 4 Durn & East. 294.) And when used in a will making a devise on failure of issue, or to a person and his issue it is treated as a word of limitation and not of purchase, and unless there is something to show that it is entitled to a more restricted sense it imports descendants or an indefinite issue. This is the *prima facie* meaning in such case and practically it may have the same effect as the use of the term "heirs of the body." (*Slater* v. *Dangerfield*, 15 M. & W. 263, 272; *Doe* v. *Rucastle*, 8 C. B. 876; *Reinoehl* v. *Shirk*, 119 Penn. St. 108; *Kingsland* v. *Rapelye*, 3 Edw. Ch. 1.)

In *Palmer* v. *Horn* (84 N. Y. 516), the meaning of the word "issue" was clearly restricted to children by the terms of the will as both terms were there used synonymously. And Judge EARL there remarked that "the word 'issue' is an ambiguous term. It may mean descendants generally or merely children; and whether in a will it shall be held to mean the one or the other, depends upon the intention of the testator as derived from the context or the

entire will, or such extrinsic circumstances as can be considered."
And he added that it would be held to have the meaning of
children "upon slight indication that such was the intention
of the testator."

In *Hobgen* v. *Neale* (L. R. [11 Eq. Cas.] 48), the word
"issue" not being restricted in its import was held to have
been used in its largest sense.

The meaning of the term issue is not qualified by anything
appearing in the provision by which the power of appoint-
ment is expressed, but it is suggested that it is by the further
provision of the will of James Drake that in case of default
in the execution of the power "I hereby give and devise the
said last eleven dwelling-houses and lots of land to my sisters
above named and to their heirs and assigns from and after the
death of the said Mary Hopeton Drake forever, to be divided
among my said sisters in equal shares, and in case of the death
of any or either of my sisters during the life-time of said Mary
Hopeton Drake leaving lawful issue, and then in such case
last mentioned the said issue of each one so dying shall take
the share or part thereof which the parent of such issue would
have taken if she had survived."

While it may be that the import of the term "lawful issue"
as used in this conditional devise may practically have the
same effect as that of "heirs of the body" it is not in the view
taken necessary to inquire whether it was used in that or the
restricted sense of children. For if it be assumed that it had
the latter meaning as there employed, it does not follow that
such term had that sense in its application to the power in the
provision of which it was used, merely because it is contained
in the same instrument. (*Dalzell* v. *Welch*, 2 Sim. 319.)
In the one instance it has application to a devise by the testator
dependent upon default of issue of Mary Hopeton Drake and
her failure to execute the power. In the other it appears in
the grant of power vesting a discretion in the donee in respect
to the persons to whom appointment should be made, limited
only by designation, to the line of blood of the testator.
He also made use of the term "lawful issue" in this uncon-

fined sense in other portions of his will, and especially in the fourth, fifth and sixth clauses by which he made devises to his sisters for the term of their lives, then over to their lawful issue, to be divided equally between them if of equal degree of consanguinity, but if of unequal degrees of consanguinity, the issue to take the share to which the parent would have been entitled if living, also in a like sense in the eighth clause. Thus issue had the meaning of descendants who would take through their *stirps* at any place in the line of descent where at the time the limitation took effect, death of ancestry permitted them by representation to do so. And the practical effect is the same as if the term "heirs of the body" had been used. There is nothing in the context to restrict or qualify the sense in which the words lawful issue were used in the provision creating the power. By a careful examination of the will, it seems evident that it was drawn with care, and the terms employed advisedly used; and the fact that the testator has in some instances definitely expressed the effect to be given to the term "lawful issue," as used in those devises, furnishes no support to the suggestion that he intended its use in this grant of power otherwise than the apparent sense in which it was there used. In some other portions of the will that term was applied by him in devises to denote the course of devolution of the property devised, and in those cases issue were to take substitutionally. There does not seem to have been any such purpose in the creation of this power of appointment. In it are no words of limitation of the estate dependent upon representation or substitution. The discretion given to the donee was within certain lines unqualified in respect to the objects of the power. And by fair construction it seems to have been intended that she should exercise the power as to her should seem proper in view of the situation when in her judgment the time should arrive for its exection.

It may here be observed that Mary Hopeton Drake designated by the testator in the will, as his adopted daughter, was treated by him as such, and it was understood in the family that she was his illegitimate daughter. He maintained and

educated her, and from the time she left school at the age of twenty years until his death, she continued to reside with him. During that period he displayed great affection for her. "She had not been treated by his sisters and their children with the cordiality and affection which they had shown towards each other." He was sensitive in that respect, and was displeased at any ill treatment or social slight of her by them, and declared that he would make a lady of her in spite of them. It may be assumed that the relation of donee of an important power of disposition of property arises out of confidence of the donor in the person vested with it; and that the greater the discretion the more is the confidence evinced. Mary Hopeton Drake evidently enjoyed the special confidence as well as the esteem of the testator; and in view of the circumstances before mentioned, it is not strange or unnatural that he should desire, so far as practicable, to place her in such position in relation to the property in question as would have the tendency to give her the respect and esteem (to which he may have deemed her entitled) of those who might expect or hope in the exercise of her discretion to become appointees of the power with which she was vested. The view here taken is that this discretionary power of the donee was not at any time after the decease of the testator confined to any one class coming within the range of the power, but embraced them concurrently; and that the term "lawful issue" was there employed in an unrestricted sense. It is, however, urged that the word "or," as between the sisters and their lawful issue, was used in a disjunctive and substitutional sense in the provision, and, therefore, the children of living parents were precluded from becoming beneficiaries. The cases cited with a view to the support of the proposition relate to bequests and devises, and do not seem necessarily to have any essential bearing upon the question here. It is true that in a devise to a person or his children the word "or" would ordinarily imply an alternative gift. In the present case the question does not relate to a devise, but to the construction of the power given to the donee to appoint the property to all or any or either of

the three sisters, "or to all or any or either of their lawful issue." The word "or" following the names of the sisters in the provision was apparently used in a discretionary rather than a substitutional sense. When used in a devise the construction may be different. Then there is no opportunity for the exercise of discretion in its execution, and the word "or" cannot be treated as of discretionary import in its relation to the provision in which it is used, but by implication words may be supplied to make it effectual as a word of substitution. This rule is not necessarily alike applicable to a discretionary power of appointment created by will.

In *Longmore* v. *Broom* (7 Ves. 124) the property was bequeathed to the executors in trust to dispose of amongst the brothers and sisters of the testator *or* their children in such shares and proportions and at such times as they should, in their discretion, think proper. The master of the rolls there said : " This is not a direct bequest to the objects, but a bequest to the executors, with authority to dispose among them. * * * A bequest to A. or B. is void, but a bequest to A. or B. at the discretion of C. is good, for he may divide it between them. That is the case of this will. I am not called upon to make any alteration in or addition to this will, which the court never does without necessity. A discretion is given to the executors." And it was held that it was within their discretion to give the fund to the parents or the children. But as they had failed to dispose of it, the court having no discretion, directed the division of the fund among the parents and children *per capita*. A like question came before the vice-chancellor in *Penny* v. *Turner* (15 Sim. 368), where, by his will, the testator gave to his mother a life interest in his property, with the provision that at her decease " I will and devise that all the said estates and property shall be divided amongst my three sisters (naming them) or their children in such proportions as my said mother shall appoint by her last will, or by deed in writing." The vice-chancellor there said that the property being given amongst the testator's sisters or their children as his mother should appoint, it is

given to a class of persons who might have been appointees; therefore, the word " or " must of necessity mean " and." Held, that by the power of appointment the mother had the discretion to select the appointees among both the sisters and their children. On review of that case (2 Phillipps, 493) the chancellor, after referring to the construction of the appellants that the sisters alone were entitled to the property, said : " I am not called upon to make any alteration or addition to the will which the court never does without necessity. The executor might say to whom the fund should be given, the parents or the children ; but the court has not that discretion." The conclusion of the vice-chancellor that the parents and children should share equally in the property was sustained. There brief reference was made to the distinction between that case and those in which direct bequests are made to legatees or their children. (See also *In Re Veale* 4 Ch. Div. 61 ; 19 Moak, 669 ; affirmed 5 Chy. Div. 622 ; 22 Moak, 361.) There the fund was bequeathed to a daughter of the testatrix for life, and after her death " to and amongst my other children or their issue in such parts, shares and proportions, manner and form as my said daughter shall by deed or will appoint." The master of the rolls remarked that " it was first argued that the words ' or issue ' were substitutional, but that argument was soon given up." It was held that the donee had the power, in her discretion, to divide the fund among the children and their parents. This seems to be the rule of construction applicable to powers of appointment, the execution of which rests in the discretion of the donee when not qualified by other words or by something having relation to it appearing in the context, showing a different intent of the testator. Nothing is found either in the will or extrinsic circumstances to modify the import of the words constituting the provision creating the power and its scope. As has been remarked, the provisions of the will were drawn with care, and each one of them seemingly was prepared in reference to its purpose only. When the word " issue " was used in a representative or substitutional sense, it was not left to implication, but was made to so

appear by express terms in the distinctive provisions where thus employed. And it is not reasonable to suppose that any words to that effect or restrictive of the import of the words "lawful issue" were inadvertently omitted in the provision in question. The substitutional sense in which the word "issue" was used in any of the provisions of direct devises furnishes no reason for a like import of it in its relation to the provision creating the power. And in view of the suggestion made to the effect that the meaning given to the word "issue" in reference to some of the devises has an essentially important or controlling bearing upon its meaning, as used in its relation to the power, it may properly be said that the particularity of expression of purpose in that respect, in all the direct devising provisions, renders the absence of any qualifying or restrictive words to that or any effect in that creating the power, significant of the purpose of the testator that it should have the effect which was expressed by the words as there used to create it; and that there was no intent to qualify or restrict it or the discretion of the donee in its execution. And this was reasonably consistent with the relation, as treated by him, between the donor and donee of the power and the situation then and later, as it may have appeared to, and been anticipated by, the testator. He was an intelligent man, and had accumulated a large estate. He and his adopted daughter were, other than the servants, the only members of his family. By other portions of the will he made provision for his sisters. The donee of the power was of the generation of their children, and was likely during her life to see an increase of their descendants. At the time of the death of the testator, in 1871, his three sisters, all their children and one grandchild were living. And at the time the testatrix made her will in 1880, and of her death in 1884, there were several of the grandchildren of the sisters, as the testator may have anticipated.

Whatever other causes may have led the testator to create the power as he did, it is not unreasonable to assume that it was in view of the situation which might be presented to the testatrix upon the increase during her life of the descendants

of his sisters that the term "lawful issue" was there used, as it appears to have been, in its unrestricted or broadest sense to embrace them within the scope of the power instead of confining its execution to their children. These views lead to the conclusion that within the range of the power of appointment of Mary Hopeton Drake were all the descendants of those sisters living at the time of her death; that in her discretion she could lawfully appoint the property to all or any or either of them, and in such shares as she saw fit; and that the execution of the power by her will was valid.

The judgment should be affirmed.

FOLLETT, Ch. J. (dissenting). The sole question involved in this appeal is whether the term "the lawful issue of my said sisters" includes the sister's grandchildren, whose parents were living at the death of Mary Hopeton Drake. If it does this action must fail, but if it does not it is well brought. The word "issue" has not a precise meaning in the English language as spoken, or as written. The word is more frequently used to denote children, but it is often intended to embrace all of the descendants of the ancestor referred to. Neither has the word a precise legal meaning, for sometimes it has been held to embrace children only, and sometimes all lineal descendants, near and remote.

In the earlier English cases it was held that the primary meaning of the word was, "all descendants," and its secondary meaning, "children." (*Leigh* v. *Norbury*, 13 Vesey, 340; *Ross* v. *Ross*, 20 Beav. 645; *Cannon* v. *Rucastle*, 8 C. B. 880; *Ralph* v. *Carrick*, L. R. [11 Ch. Div.] 885; *Morgan* v. *Thomas*, L. R. [9 Q. B. Div.] 643–646; *Maddock* v. *Legg*, 25 Beav. 531; *Re Jones Trusts*, 23 id. 242; Hawkins on Wills, 87.)

But this definition has not passed unchallenged. KENT says, (4 Com. 278): "The term issue may be used either as a word of purchase or of limitation, but it is generally used by the testator as synonymous with child or children." Judge RED-FIELD, in his learned work on Wills, says: "It seems to us that

the term 'issue' in its primary signification imports children, and that it is a secondary meaning, by which it has been held to include the issue of issue, in an indefinite descending line. It is susceptible, more naturally than children, of including all descendants, but the primary sense certainly is that of direct issue, and it is only in a secondary sense that it also includes remoter descendants, as the issue of issue." (2 Redfield on Wills [3d ed.] 37, 38, note 5.)

In *Freeman* v. *Parsley* (3 Vesey, 421), the chancellor, in applying the rule that the word " issue " included grandchildren and allowed them to take in competition with their parents, said : " In the common use of language, as well as the application of the word 'issue' in wills and settlements, it means all indefinitely. I very strongly suspect that in applying that to this will I am not acting according to the intention ; but I do not know what enables me to control it. If a medium could be found between a total exclusion of the grandchildren and the admission of them to share with the parents, the nearest objects of the testator, that would be nearer the intention ; as by letting in those, whose parents were deceased, to take the share the parents, if living, would have taken ; but that construction would be setting up my own conjecture against the obvious sense of the words. When you put the question, whether he meant all these grandchildren should take with their parents, I think he would say he did not ; yet, if he was asked the other way, if it should go to the survivor, while there was a descendant, I am equally clear he would not have given it to the survivor. They are, therefore, all entitled."

Judge REDFIELD, commenting on the case last cited, said : " This admission of so experienced an equity judge goes far to convict the English rule of having perverted the intention of testators in the majority of instances. There can be no question that in the great majority of cases, say ninety-nine in a hundred, where testators have given estates to children, or to them and their issue, they do have in mind the precise distinctions adverted to above, and intend the issue to take *only by way of substitution for, and not in competition with, the*

*ancestor.* It might, therefore, seem more just, and surely more frank in the courts, to change the rule of construction by a sweeping overruling of the former cases, than to attempt to reach the same practical result by a multiplicity of exceptions, every one of which demonstrates the fallacy of the rule. In saying this we only intend that if the courts could restore the term issue to its primary sense of children, and treat its extension so as to include all descendants as a secondary signification, it might enable them to escape some of the refinements into which they are driven at present, in consequence of the early English cases having established the opposite construction." (2 Red. Wills [3d ed.] 39, note 9.)

The only facts found by the trial court which are claimed by the counsel for either party to throw any light upon the intention of the testator in respect to the persons whom he intended to include within the term "lawful issue of his sisters" are contained in the twenty-second finding.

"*Twenty-second.* That the said testatrix, Mary Hopeton Drake, was treated by the said James Drake as his daughter, and it was understood in his family that she was his illegitimate daughter; that he maintained and educated her, and on her leaving school at the age of twenty years, in or about the year of 1860, she went to live with him, and continued to reside with him until his death in the year 1871. That during all that period he displayed great affection for her, and she had not been treated by his sisters and their children with the cordiality and affection which they had shown toward each other."

This finding seems to throw little or no light upon the sense in which the testator intended to use the disputed term, and its meaning must be arrived at from the face of the will. If the words of the power be considered apart from the words of the gift over in default of the execution of the power, the term "lawful issue" is not limited or qualified, and under the English cases it would include the remote descendants of the deceased sisters of the testator, even though such remote descendants had parents living.

But in determining the meaning of the term, it is our duty to examine the sense in which it was used in other parts of the will. By the ninth clause, which contains the power, pursuant to which the appointment was made, there is a gift over in default of appointment, in the following language : " I hereby give and devise the said last-mentioned eleven dwelling-houses and lots of land to my sisters above named and to their heirs and assigns, from and after the death of the said Mary Hopeton Drake, forever, to be divided among *my said sisters* in equal shares, and in case of the death of any or either of my said sisters during the life-time of the said Mary Hopeton Drake, leaving *lawful issue*, and then in such case last mentioned the said *issue of each one* so dying shall take the share or part thereof which the *parent of such issue* would have taken if she had survived." By the language of the devise over, it is apparent that the testator did not contemplate that his bounty, in default of issue of Mary Hopeton Drake, and of an appointment by her, was to extend beyond : (1) His sisters. (2) Their children ; and that the term " lawful issue " embraced only the children of his sisters. The words provide that the issue, in case of the parent's death, should take the parent's share, and the word parent plainly refers to the three sisters. The parents of such issue are referred to as of the feminine gender, evidently meaning his three sisters. In this instance at least, the testator did not intend that descendants of his sisters more remote than their children, should become the objects of his bounty.

In determining the meaning of the words " lawful issue," as used in the power, we may inquire if a definite meaning has been given to them in other parts of the will. When a different meaning has been given in independent clauses relating to distinct devises, and to different persons, such meaning is not necessarily controlling. (*Carter* v. *Bentall*, 2 Beav. 551 ; *Hedges* v. *Harpur*, 9 id. 479 ; *Waldron* v. *Bolter*, 22 id. 284.) But when the term has been given a meaning in a devise of the same subject, and with reference to the same devisees, it is, in the absence of other circumstances, controlling.

In *Palmer* v. *Horn* (84 N. Y. 516), the will under construction contained the following bequest: " To divide the sum of $20,000 into as many shares as there shall be lawful issue of my deceased nephew, Matthew Horn, living at my death, and to invest the same and apply the interest and income from each of said shares to the use of *each of the said children, respectively*, and as they respectively depart this life, to pay over the principal of said share to their lawful issue, share and share alike."

When the will was executed, and when the testatrix died, three children of the aforesaid deceased nephew were living. But before the execution of the will, a daughter of said nephew had died, leaving two children who survived the testatrix. The children of the deceased daughter asserted that they were included in the term "lawful issue," and were entitled to a share. But it was held that the words "each of the said children respectively" limited the word "issue" to the children of the deceased nephew, and that the grandchildren were not embraced within the term "lawful issue."

In discussing the question the learned judge, who spoke for a unanimous court, said:

" The word 'issue' is an ambiguous term. It may mean descendant's generally or merely children; and whether in a will it shall be held to mean the one or the other depends upon the intention of the testator as derived from the context of the entire will, or such extrinsic circumstances as can be considered. (*Doe ex dem. Cannon* v. *Rucastle*, 8 C. B. 876; *Ralph* v. *Carrick*, L. R. [11 Ch. Div.] 873; *Earl of Oxford* v. *Churchill*, 3 Ves. & B. 59, 67.) In England, at an early day, it was held, in its primary sense, when not restrained by the context, to be co-extensive and synonymous with descendants, comprehending objects of every degree. But it came to be apparent to judges there that such a sense given to the term would, in most cases, defeat the intention of the testator and hence in the latter cases there is a strong tendency, unless restrained by the context, to hold that it has the meaning of children. It will at least be held to have such meaning, upon

a slight indication in other parts of the will that such was the intention of the testator. (2 Jarm. Wills [R. & T. ed.] 635 ; 2 Redf. on Wills [2d ed.] 34, 37 . and note.) And substantially the same rule of construction prevails in this country. In 4 Kent's Commentaries, 278, in a note, the learned chancellor said : ' The term issue may be used either as a word of purchase or of limitation, but it is generally used by the testator as synonymous with child or children.' (*Palmer* v. *Horn*, 84 N. Y. 516 ; *Palmer* v. *Dunham*, 125 id. 68.)"

In *Edwards* v. *Edwards* (12 Beav. 97), the testator had three unmarried daughters, Mary, Marianne and Ann ; to Mary he gave the use for life of £1,000 in case she married. To Marianne the use for life of £700, in case she married. To Ann the use for life of the residue of the estate in case she married. The remainder over in each case "to be divided among her lawful issue." Ann and Mary died unmarried ; Marianne married and had seven children, three of whom died before their mother. One of the four surviving children had four children who claimed to participate in the fund upon the ground that they were included within the word "issue." In a subsequent part of the will the testator provided that in default of issue of all his daughters that the sums bequeathed to them for life should be equally divided among all the children of T. R. and J. A., and in default of "lawful issue" of either of them the whole to be divided equally among the "children of the other," share and share alike. It was held that though the word "issue" was used equivocally in the first part of the will, that in the subsequent part it was used as meaning children, and it was held that it must be assumed that it was used in the same sense in all parts of the instrument. The same rule was stated and applied in *Rhodes* v. *Rhodes* (27 Beav. 413). In *Robinson* v. *Sykes* (23 id. 40), it was held "that though the word issue is *nomen generalissimum* and includes all the remotest descendants, nevertheless, held that where issue are pointed out as persons to take, with reference to the share of the parent, a gift which, so far as regards the parent, fails, they take on the principle which may be called a

*quasi* representative principle, that is, that the children of each parent whose share fails takes that parent's share, but not admitting the grandchildren to take in competition with the children, to participate in the share of that deceased parent." The same rule was held in *Ross* v. *Ross* (20 Beav. 645).

As before shown, when the testator was providing for a disposition of these eleven lots, in default of issue, and of an appointment, the term "lawful issue" was so limited that it only included the children of the sisters, and it provides that such children should take, representatively, the children of each parent her share. Unless there is something in other parts of the will which lead to the conclusion that the testator intended by those same words to authorize the appointee of the power to execute it in favor of any of the descendants of the sisters, near or remote, it must be held that she was limited in her choice to the sisters and their children, and in case any of the children were dead, to their children.

In the fourth, fifth and sixth clauses of the will the testator devised to each of his sisters a house and lot for life, with remainder over in each case, in the following language:

" From and immediately after the death of the said (sister), to her lawful issue forever, to be divided equally between them in case they should be of equal degrees of consanguinity, and in case they should be of unequal degrees of consanguinity, then the issue of each deceased parent to take the share which the parent of such issue would have been entitled to if he or she had been then surviving."

By these clauses the testator gave (1) a life estate to each sister, and after her death to her lawful issue. It is plain that the word "issue" was not here used in the sense of children only, for it provides that if they (issue) should be of unequal degrees of consanguinity that the issue of each deceased parent should take the share of such parent. Clearly, the term "issue" in the fourth, fifth and sixth clauses was used representatively, the testator not intending that children should take to the exclusion of or concurrently with their parents.

By the eighth clause of the will the testator empowered

Mary Hopeton Drake to appoint any or all of the eleven houses and lots devised to her for life in the seventh clause to any or all of her lawful issue, but in case she failed to so appoint, and left lawful issue her surviving, the remainder over was disposed of as follows:

" To the said Mary Hopeton Drake, during her natural life, to her said lawful issue, from and immediately after her death, forever, and if such issue shall consist of more than one person, and shall be of equal degrees of consanguinity, then the said estate hereby given and devised to them is to be divided among them in equal shares, and if such issue shall consist of persons of unequal degrees of consanguinity, then the issue of any deceased parent shall take the share which the said parent of such issue would have taken if he or she had been then surviving."

By this clause the testator plainly intended that if Mary Hopeton Drake left lawful issue, and failed to appoint as between them, that the houses should pass to her descendants, near and remote, upon the principle of representation, the children of each deceased parent taking the parent's share. In the fourth, fifth and sixth clauses the testator provided for the same persons, his sisters and their descendants, that he provided for contingently by the ninth clause, and no sufficient reason appears upon the face of the will or upon the facts found to lead us to the conclusion that he intended by the word "lawful issue," as used in the power, to embrace all descendants, and, in all other parts of the will, that he used the term in a different and more restricted sense. It follows that the attempted execution of the power by Mary Hopeton Drake, as to seven of the eleven houses and lots, was invalid, and they pass under the devise over, one-half to the children of Susan A. Drake and one-half to the children of Sarah A. Lawrence. The counsel for the appellant, in his brief, does not ask for a judgment absolute, but for a reversal and a new trial, which should be granted, with costs to abide the event.

All concur with BRADLEY, J., except FOLLETT, Ch. J., HAIGHT and BROWN, JJ., dissenting.

Judgment affirmed.