issued upon the enterprise which was based upon this plant, and other securities apparently not related thereto. In one instance, in asking for the reconsideration of a refusal to extend the note, he gives the grounds which in his judgment entitle him to indulgence, but he makes no intimation that the extension might well be accorded to one who held against the payee a substantial offset. It does not appear whether the defendant paid interest or bank discount upon the earlier renewals, but his last note was given to include interest. It is not rationally probable that this transaction continued for more than a year and a half and developed the features just described, without the assertion of a counterclaim, if there were between the parties an agreement under which the plaintiffs were indebted to the maker of the note in a constantly growing sum, finally larger than the note indebtedness and at all times of practical substance. There were repeated requests by the plaintiffs that the defendant would render to them his account. While nothing was said in the plaintiffs' letters as to the nature or the basis of this account, such requests, with all the circumstances and relations of the parties, give color to the possibility of an understanding that the defendant was permitted to make some disbursements on the plant at the plaintiffs' expense. But the probabilities fall short of any agreement comprehending the broad and extended charges now asserted, and in the breadth of the defendant's claim there is no evidence from which a contract for any specific or limited expenditure can be found.

In the absence of proof of the intention of the parties, the various payments made on the contract price should, under all the circumstances, be taken as applicable to the obligations remaining unpaid at the time of the payments respectively in the order of their maturity. Hence, as calculation shows, of the sum of $20,033.25, now unpaid, $653.25 is to be regarded as a part of the sum of $27,520, due 30 days after completion, viz., on December 1, 1893, and the balance, $19,380, must be considered as the last installment, which became payable four months after completion, viz., on March 1, 1894.

There should be judgment for the plaintiffs for $20,033.75, with interest on the parts thereof as above set forth, and against the defendant for the dismissal of his counterclaims. Counsel are requested to submit findings accordingly.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

James & Thomas H. Troy, for appellant.

Grout, Jenks, Mayer & Hyde, for respondent William K. Callahan.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Herbert T. Ketcham, referee.

---

(109 App. Div. 798.)

## PHELPS v. CAMERON.

(Supreme Court, Appellate Division, Second Department. December 29, 1905.)

WILLS—CONSTRUCTION—DESIGNATION OF DEVISEES—LAWFUL ISSUE.

Testator's will directed that his estate be divided into as many parts as he had children, the income of each part to go to a child for life, and upon the child's death the part to be divided among the "lawful issue" of the child. At the time the will was executed several of testator's children were married and had children. *Held*, that the daughters of a deceased daughter and a grandchild of such daughter took equally under the clause "lawful issue."

Hirschberg, P. J., and Jenks, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Charles Henry Phelps, as one appointed to execute trusts

left unexecuted under the will of William Wall, deceased, against Rosalie De Goicouria Cameron and others. From a portion of a judgment construing the will, Rosalie De Goicouria Cameron appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Samuel Biker, Jr., for appellant.

John P. East, for respondent Phelps.

John M. Harrington (Grattan Colvin, on the brief), for respondents Cameron and others.

William Temple Emmet, for respondents Robinson and others.

WOODWARD, J. William Wall, a resident of this state, died on the 20th day of April, 1872, leaving a last will and testament, which was duly admitted to probate. He was survived by eight children, among them being his daughter Mary Cecelia (designated in the will as Celia), who subsequent to the death of her father married the defendant Albert V. De Goicouria. By the terms of his will William Wall, deceased, gave all his property to his executors in trust, and, after making certain provisions which are not material to the question here presented, directed his trustees to divide the residue of his estate into eight parts, and to invest the same separately, and apply the income of one of such parts for the use of each child during life, and upon such child's death to pay and divide the capital among the lawful issue of such child equally. All of the trusts are alike and expressed in the same terms; the only one directly affected by this appeal being that created for the benefit of his said daughter Mary Cecelia De Goicouria, which is in the following language:

"And upon the further trust to apply the income of the remaining equal eighth part or share to the use of my daughter Celia during her natural life, and at her decease to pay and divide the principal of such last-mentioned eighth part or share to and among the lawful issue of my said daughter Celia equally."

The daughter Celia, subsequently known as Mary Cecelia De Goicouria, died on the 18th day of August, 1904, leaving, her surviving, her two daughters, the respondents Rosalie W. De Goicouria Cameron and Alice W. De Goicouria, and a grandchild, the appellant, Rosalie De Goicouria Cameron, the only child of the said Rosalie W. De Goicouria Cameron. The respondents, the two daughters of Mrs. De Goicouria, claim, and in this they are sustained by the judgment from which this appeal is taken, that they are entitled to have the principal divided equally between them, each taking one-half, while the appellant, Rosalie De Goicouria Cameron, on the other hand, contends that she comes within the "lawful issue" contemplated by the will of William Wall, and should participate equally with her mother and aunt, each taking one-third of the same. The only question involved is the legal interpretation of the phrase "lawful issue," as used by the testator. Is it to be taken in its technical legal sense, as embracing descendants, or is it to have a limited sense, and be confined to the children of the life tenant?

We look to the language of the will in vain for any indication of the

testator's understanding of the phrase "lawful issue." He uses the
same expression in relation to each of the eight trust estates, and
nowhere in the will is there any reference to children or parents. He
gives each of his eight children a life use of one-eighth of his estate,
after making provisions for his debts, funeral expenses, support of
his widow, etc., with remainder over to the lawful issue of each of
such children, and this is all the light we have upon the subject from
the language of the will. At the time of the making of the will
the daughter Celia was unmarried, but several of the other children
of the testator were married and had children. There were in exist-
ence, at the time of making the will and at the death of the testator,
those who were to become the life tenants, as well as those who
would take upon the death of the parents, and with these latter in
existence, there was not only the potentiality of great-grandchildren;
but the probability of them in the natural course of events, and the
fact that the testator used but a single phrase in connection with
each of the trusts, and nowhere in the will uses language suggesting
a limitation to children, makes it difficult to give any other construc-
tion to the words "lawful issue" than the legal signification, which
unquestionably is equivalent to descendants. Drake v. Drake, 134
N. Y. 220, 224, 32 N. E. 114, 17 L. R. A. 664, and authorities there
cited; Soper v. Brown, 136 N. Y. 244, 250, 32 N. E. 768; N. Y.
Life Ins. & Trust Co. v. Viele, 161 N. Y. 11, 19, 20, 55 N. E. 311,
76 Am. St. Rep. 238, and authorities there cited. In the Soper Case
the learned judge writing the unanimous opinion of the court says:

"There are cases where it may be conjectured that this broad meaning would
produce a result not contemplated by a testator."

And it is quite probable that the case at bar is such a one, but the
learned jurist continues:

"It is settled that under a gift to 'issue,' where the word is used without
any terms in the context to qualify its meaning, the children of the ancestor
and the issue of such children, although the parent is living, as well as the is-
sue of deceased children, take in equal shares, per capita and not per stirpes, as
primary objects of the disposition. It might well be doubted whether a testa-
tor actually contemplated that the children of a living parent would take an
equal interest with the parent under the word 'issue,' or that the issue of a
deceased child should not take by representation the share of its parent.
Lord Loughborough referred to this in Freeman v. Parsley, 3 Ves. 421, and
while he held that all were entitled equally per capita, said that he expected
that it was contrary to the intention, and regretted that there was no medium
between the total exclusion of the grandchildren and admitting them to share
with their parents."

While it may be that this language was not essential to the de-
termination of the question then before the court, a careful examina-
tion of the cases which must be regarded as controlling here shows
that it is in harmony with the law as understood and administered in
this state, and it is too late, if it were desirable, to change the meaning
of words having a well-defined legal interpretation. In Palmer v.
Horn, 84 N. Y. 516, which has gone perhaps as far as any case
in this state to limit the phrase "lawful issue" as used in wills, the
meaning of the word "issue" was clearly restricted to children by
the terms of the will, as the terms "issue" and "children" were used

synonymously. Drake v. Drake, 134 N. Y. 220, 225, 32 N. E. 114, 17 L. R. A. 664. And it was pointed out that whether it was to be understood as referring to children or to descendants must depend "upon the intention of the testator as derived from the context of the entire will, or such extrinsic circumstances as can be considered." It was also suggested by the learned jurist writing in Palmer v. Horn, supra, that the word would be limited to children "upon a slight indication in other parts of the will that such was the intention of the testator"; but an examination of the cases shows no instance in which the court has felt justified in construing the words in and of themselves as limiting a gift to the immediate children, and in the case at bar we are wholly unable to discover in the context, in the will as a whole, or in any of the circumstances surrounding the testator, anything to indicate that the words "lawful issue" were used in any other than their legal sense. It may be, as suggested, that if the testator had realized that his great-grandchild was to become the competitor of his grandchildren in the distribution of one of these trust estates he would have used different language; but the trouble is that he has not done so, and the authority of this court is limited to the construction of the language used, in the light of the circumstances under which it was employed, and the judicially determined use of language cannot be changed to suit our conceptions of what would have been the testator's intention if he had foreseen what has actually happened.

The judgment, in so far as it is appealed from, should be reversed.

Judgment reversed, and new trial granted; costs to abide final award of costs. All concur, except HIRSCHBERG, P. J., and JENKS, J., who dissent.