FRANZ CHWATAL, Appellant, *v.* GEORGE SCHREINER, Respondent.

148 683
161 20

1. WILL — MEANING OF "ISSUE." In a will the word "issue" in its general sense, in the absence of any indication to the contrary, includes in its meaning descendants generally; but when it is apparent from the extrinsic circumstances, proper to be considered, or the provisions of the will, that the testator intended children, its meaning will be so limited.

2. WILL — CONSTRUCTION — "ISSUE." The will of a testator who died before the adoption of the Revised Statutes devised the realty to the executors in trust, to be kept entire and not to be sold "during the natural lives of my children, and the natural life of the longest liver of them, and until the youngest person among such of the *issue* of my said children, or any of them, as shall be living at the death of such longest liver, or shall be born in due time afterwards, shall come to the age of twenty-one years." By the disposing clause of the will, the realty, on the expiration of the trust, was devised to the testator's grandchildren and to their issue, "to take said estate in like manner in every respect as if it had been the estate of the respective parents of such grandchildren as tenants in common, and had descended to them, and their lawful issue by inheritance." At the time of the testator's death there were children and grandchildren, but no great-grandchildren, in being.

*Held*, that the purpose of the testator, expressed in the disposing clause, that his grandchildren should take the estate, considered in connection with the fact that no great-grandchildren were in being at his death, indicated that he intended by the word "issue," as used in fixing the term of the trust, children of his children, that is, his grandchildren.

*Held, also,* that the will disclosed no intention on the part of the testator to continue the trust as long as he had the power to do so, under the rule as to future limitations then in force.

3. Will — Suspension of Power of Alienation. Where the intent of the testator as to the term of a limitation upon the absolute power of alienation is left uncertain and doubtful, that construction should be adopted which is nearest in accord with public policy.

Mem. of decision below, 77 Hun, 611.

(Argued February 26, 1896; decided March 10, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 13, 1894, which affirmed a judgment in favor of defendant dismissing the complaint upon the merits and decreeing specific performance of a contract to purchase lands, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Samson Lachman* for appellant. By construing the word "issue" to mean descendants, the intention of the testator is carried out and the property held intact for the full period designed by him and allowed by the law. (*Drake* v. *Drake,* 134 N. Y. 220; *Soper* v. *Brown,* 136 N. Y. 244; 4 Kent's Comm. 278; 2 Redf. on Wills [3d ed.], 37, 38; *Ross* v. *Ross,* 20 Beav. 645; *Ralph* v. *Carrick,* L. R. [11 Ch. Div.] 873; *U. S. T. Co.* v. *Tobias,* 21 Abb. [N. C.] 392; *In re Brown,* 93 N. Y. 295.)

*H. H. Anderson* and *John M. Bowers* for respondent. The phrase "issue of my children," as used in this will in limiting the duration of the trust, is equivalent to the phrase "children of my children," the intention of the testator evidently being that the title to this real estate should vest in his grandchildren on the death of his children. (*Mowatt* v. *Carow,* 7 Paige, 328; *Wylie* v. *Lockwood,* 86 N. Y. 301; *Guernsey* v. *Guernsey,* 36 N. Y. 267; *Palmer* v. *Horn,* 84 N. Y. 516; 4 Kent's

Comm. 278; Redf. on Wills [5th ed.], 37, 38; *Edwards* v. *Edwards*, 12 Beav. 97; *Pond* v. *Bergh*, 10 Paige, 140; *Drake* v. *Drake*, 134 N. Y. 220; *Soper* v. *Brown*, 136 N. Y. 244; *Daly* v. *Greenberg*, 69 Hun, 228; *Thompson* v. *Simson*, 1 D. & W. 459.)

HAIGHT, J.   This action was brought to recover money paid upon a contract to sell and convey a lot of land on 90th street in the city of New York, together with the counsel fees and disbursements incurred in the examination of the title, upon the ground that the defendant was unable to give a merchantable title.

William Rhinelander died September 9th, 1825, seized and possessed of a large tract of land in the city of New York, of which the premises in question were a part. He left a last will and testament, which has been duly proved and admitted to probate, in and by the fifth clause of which he devised his real estate in the city of New York to his executors in trust, to receive the rents, issues and profits, and to apply the same in the manner directed.   It then provides as follows:

" It is my will that the real estate situated in the city and county of New York, whereof I may die seized or possessed, shall be kept entire, and no part thereof sold during the natural lives of my children, and the natural life of the longest liver of them, and until the youngest person among such of the issue of my said children, or any of them, as shall be living at the death of such longest liver, or shall be born in due time afterwards, shall come to the age of twenty-one years.   *   *   *   Lastly: The residue of the said rents, issues and profits to distribute in equal parts among my children then living, and the lawful issue of such of my said children as may be then dead, leaving lawful issue, such issue to receive such share only as the parent of such issue, if living, would be entitled to receive, and each of my children always to receive such share as such child would have been entitled to receive if all my children then dead, leaving lawful issue then alive, had been living. And after the expiration of the term for which my said lands are above devised

to my executors in trust I do then devise the said real estate whereof I may die seized or possessed in the city and county of New York to my lawful grandchildren and the lawful issue of such grandchildren, such grandchildren and their lawful issue to take said estate in like manner in every respect as if it had been the estate of the respective parents of such grandchildren as tenants in common, and had descended to them and their lawful issue by inheritance."

William Rhinelander left him surviving seven children and eleven grandchiidren. His son, William C. Rhinelander, was the longest liver of his children and died June 20, 1878. At the time of his death nineteen grandchildren of William Rhinelander were living and three had died, two without descendants, and one leaving a child surviving, all of whom were of full age. A large number of great-grandchildren and a number of great-great-grandchildren were also living, and other great-great-grandchildren were born within due time after the death of William C. Rhinelander. The last was Emily A. Hurry, who was born March 6, 1879, and will become of age March 6, 1900.

Shortly after the death of William C. Rhinelander an action in partition was begun by one of the grandchildren of William Rhinelander, in which action all the living grandchildren and the child of the only grandchild who was dead leaving a child, were made parties. On the 10th day of February, 1882, a final decree was entered in the partition action, in which the premises in suit were allotted to Mary R. Swan a grandchild, who subsequently conveyed the same to the defendant.

It is contended, on behalf of the plaintiff, that the trust will not terminate until the youngest great-great-grandchild, Emily A. Hurry, becomes of age on the 6th day of March, 1900, whilst on behalf of defendant it is claimed that the trust terminated on the death of William C. Rhinelander, the grandchildren and the only child of the deceased grandchild, all being at that time more than twenty-one years of age. The whole controversy turns upon the meaning of the word " issue," as found in the clause of the will above referred to,

the plaintiff claiming that it means descendants, while the defendant insists that it means children.

It is not our purpose to enter upon any elaborate discussion of the meaning of the word "issue," for very much has already been written upon that subject. It has been exhaustively discussed in recent cases in this court, in which the authorities of England and of this country have been fully considered, and the rule determined. In *Palmer* v. *Horn* (84 N. Y. 516, 519) EARL, J., says: "The word 'issue' is an ambiguous term. It may mean descendants generally, or merely children; and whether in a will it shall be held to mean the one or the other, depends upon the intention of the testator as derived from the context or the entire will, or such extrinsic circumstances as can be considered. In England, at an early day, it was held, in its primary sense, when not restrained by the context, to be co-extensive and synonymous with descendants, comprehending objects of every degree. But it came to be apparent to judges there that such a sense given to the term would in most cases defeat the intention of the testator, and hence in the latter cases there is a strong tendency, unless restrained by the context, to hold that it has the meaning of children. It will at least be held to have such meaning upon a slight indication in other parts of the will that such was the intention of the testator."

In *Drake* v. *Drake* (134 N. Y. 220, 224), BRADLEY, J., says: "In its general sense, unconfined by any indication or intention to the contrary, the word 'issue' includes in its meaning all descendants. It may, however, when such appears to have been the intent with which the word is used, have the restricted import of children. * * * The word 'issue' may be a word either of purchase or limitation, and will be construed the one or the other as may be necessary to effectuate the intent with which it appears to have been used in the instrument where it is employed."

In *Soper* v. *Brown* (136 N. Y. 244, 248), ANDREWS, J., says: "I am of opinion that the word 'issue' in a deed or will, when used as a word of purchase and where its meaning

is not otherwise defined by the context, and there are no indications that it was used in any other than its legal sense, comprehends all persons in the line of descent from the ancestor and has the same meaning as ' descendants,' and that while it embraces the children of the ancestor, it is because they are descendants in common with all other persons who can trace direct descent from a common source. * * * There are many authorities on wills, in which the word has been construed to mean ' children ' only. These authorities rest upon the undisputed principle that words used by a testator in his will are to be interpreted in the sense which he attributed to them, where it appears by the context that they were not used in their strict legal sense. It is but one of the applications of the doctrine that in the construction of wills the intention of the testator is to govern when not inconsistent with the rules of law."

The rule, therefore, is that the word " issue " in its general sense, in the absence of any indication of intention to the contrary, includes in its meaning descendants generally. But when it is apparent from the extrinsic circumstances, proper to be considered, or the provisions of the will, that the testator intended children, its meaning will be so limited.

Referring to the clause of the will fixing the term of the trust, he provides that his real estate in the city of New York shall be kept entire and not be sold " during the natural lives of my children, and the natural life of the longest liver of them, and until the youngest person among such of the *issue* of my said children, or any of them, as shall be living at the death of such longest liver, or shall be born in due time afterwards, shall come to the age of twenty-one years."

This clause standing alone, unexplained and unqualified, under the rules of construction above given, would doubtless require us to hold that the word " issue " meant " descendants." But, as we have seen, at the time of the testator's death there were living seven children and eleven grandchildren. No great-grandchildren had then been born, so as to become the special objects of his bounty. By the disposing

clause he provides, " And after the expiration of the term for which my said lands are above devised to my executors in trust I do then devise the said real estate whereof I may die seized or possessed in the city and county of New York to my lawful grandchildren and the lawful issue of such grandchildren, such grandchildren and their lawful issue to take said estate in like manner in every respect as if it had been the estate of the respective parents of such grandchildren as tenants in common, and had descended to them and their lawful issue by inheritance."

Here we have the intention of the testator disclosed. He did not intend that his children should take; for he continued the trust during the life of the longest liver of them. He did not intend that his grandchildren should take during their minority; for he continued the trust after the decease of his children, until the youngest person among the issue of his children then living or who should be born in due time thereafter, became twenty-one years of age. He, however, did expect his grandchildren to take the estate, for he expressly devises the same to them and to their issue to take their parents' portion in like manner as if it had descended to them by inheritance. This purpose was clearly expressed, and taken in connection with the fact that no great-grandchild was in being at the time of the testator's death, would seem to indicate that he intended the word " issue," as used by him in fixing the term of the trust, as referring to the children of his children, in other words, his grandchildren.

It is claimed that it was the intention of the testator to continue his trust as long as he had the power to do so. It is apparent, however, that he did not so continue it, and we fail to discover such an intention. To so continue the trust would take it beyond the lives of the trustees and cast the management of the estate upon persons, perhaps strangers, never selected by him. It is not apparent that he so intended.

Under the rule of future limitations then in force the trust could be continued during the lives of persons in being at the creation of the limitation, and for the period of gestation suc-

87

ceeding the lives in being and for twenty-one years thereafter. (18 Am. & Eng. Ency. of Law, 338.) It was thus in his power to continue the limitation during the life of the longest liver of his eleven grandchildren instead of his children, and until a child that should within due time thereafter be born, became twenty-one years of age. It will thus be seen that the testator has not and did not intend to continue the trust as long as he had power to do so.

The policy of our state has been to shorten rather than to extend the future limitations of estates. In was consequently provided in the revision of the statutes, made after this will was admitted to probate, that the absolute power of alienation of lands should not be suspended by any limitation or condition whatever for a longer period than during the continuance of not more than two lives in being at the creation of the estate, etc.

Where the intent of the testator is left uncertain and doubtful, that construction should be adopted which is nearest in accord with public policy.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.