(67 App. Div. 183.)

EMMET v. EMMET et al.

(Supreme Court, Appellate Division, Second Department. December 23, 1901.)

WILLS—CONSTRUCTION—MEANING OF "ISSUE."

Testatrix devised the residue of her estate to her "lawful issue," to be divided equally between them, and then directed her executor to sell the realty and invest the proceeds for the interest of her "child or children." When the will was executed, testatrix was not 28 years old, and had but one child, a mere baby, but at the date of her death she left surviving six children and one grandchild. *Held,* that word "issue," as used by the testatrix, referred to her children only, and not descendants generally, and the grandchild took no interest in the devise.

Appeal from special term, Westchester county.

Partition proceedings by William Temple Emmet against Greenville Temple Emmet and others. From so much and such parts of an interlocutory judgment as sustain the exceptions of the infant defendant, Mary Olyphant Emmet, to the referee's report herein, and as modify the said report in accordance with such exceptions, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

W. T. Emmet, in pro. per.

H. B. Closson, for respondent Mary O. Emmet, by guardian ad litem.

HIRSCHBERG, J. The action is for the partition of real estate, and the determination of the only controversy depends upon the construction to be placed upon the will of Katharine Emmet, de-

vising the real estate. This will was executed on the 28th day of February, 1871, at which time the testatrix had but one child. At the date of her death, viz. September 25, 1895, she had six children, all living, and one of them, and one only, a son, had a child, to wit, the infant defendant, Mary Olyphant Emmet, whose father, however, has since died. The question in the case is whether the real estate was devised to the children alone, each taking an undivided sixth part, or to the children and the grandchild together, each taking an undivided seventh part. The referee adopted the first suggestion, while the court at special term decided in accordance with the second. The will is brief. After the giving of a general legacy and the creation of two annuities, for the maintenance of annuities the executor is directed to invest sufficient of the estate to yield the necessary amount. It then provides as follows:

"I do give and bequeath all the rest, residue, and remainder of my estate of every kind and description, and all the estate and property of every kind over which I have power of appointment or control, to my lawful issue, to be equally divided between them. I do nominate and appoint my beloved husband, Richard S. Emmet, to be the executor of this, my will, and I do give him full power and authority to sell and convert into money all the real estate whereof I may die seised and possessed, and to invest the proceeds of such sales, and all other personal property whereof I may die possessed, in such manner as he may deem most for the interest of my child or children."

It is unnecessary to devote time to an elaborate discussion of the term "issue," as the meaning to be given it has been often exhaustively considered, both in England and in this country.

In Palmer v. Horn, 84 N. Y. 516, Judge Earl said (page 519):

"The word 'issue' is an ambiguous term. It may mean descendants generally, or merely children; and whether, in a will, it shall be held to mean the one or the other, depends upon the intention of the testator as derived from the context or the entire will, or such extrinsic circumstances as can be considered. In England, at an early day, it was held, in its primary sense, when not restrained by the context, to be coextensive and synonymous with 'descendants,' comprehending objects of every degree. But it came to be apparent to judges there that such a sense given to the term would in most cases defeat the intention of the testator, and hence in the later cases there is a strong tendency, unless restrained by the context, to hold that it has the meaning of 'children.' It will at least be held to have such meaning upon a slight indication in the other parts of the will that such was the intention of the testator."

In Drake v. Drake, 134 N. Y. 220, 32 N. E. 114, 17 L. R. A. 664, where, by a divided court, the broad construction was given to the word "issue" in its application to the donees of a power of appointment, Judge Bradley said (page 224, 134 N. Y., page 116, 32 N. E., and page 668, 17 L. R. A.):

"In its general sense, unconfined by any indication or intention to the contrary, the word 'issue' includes in its meaning all descendants. * * * It may, however, when such appears to have been the intent with which the word is used, have the restricted import of 'children.' * * * The word 'issue' may be a word either of purchase or limitation, and will be construed the one or the other as may be necessary to effectuate the intent with which it appears to have been used in the instrument where it is employed."

In Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731, Judge Andrews, referring to the word "issue," said (page 249, 136 N. Y., page 770, 32 N. E., and page 734, 32 Am. St. Rep.):

"There are many authorities on wills in which the word has been construed to mean 'children' only. These authorities rest upon the undisputed principle that words used by a testator in his will are to be interpreted in the sense which he attributed to them, where it appears by the context that they were not used in their strict legal sense. It is but one of the applications of the doctrine that in the construction of wills the intention of the testator is to govern when not inconsistent with the rule of law."

In Chwatal v. Schreiner, 148 N. Y. 683, 43 N. E. 166, Judge Haight stated the proper rule of construction as follows (page 688, 148 N. Y., and page 167, 43 N. E.):

"The rule, therefore, is that the word 'issue,' in its general sense, in the absence of any indication of intention to the contrary, includes in its meaning descendants generally. But when it is apparent from the extrinsic circumstances, proper to be considered, or the provisions of the will, that the testator intended 'children,' its meaning will be limited."

See, also, Palmer v. Dunham, 125 N. Y. 68, 25 N. E. 1081.

In Schmaunz v. Goss, 132 Mass. 144, the word "descendants" in a will was construed as synonymous with "children," although it is apparent that the use of that word would be regarded among laymen as a stronger indication of an intent to include grandchildren than would the use of the word "issue." Said James, L. J., in Ralph v. Carrick, 11 Ch. Div. 873, 883:

"Now, the word 'issue' is an ambiguous word. In the ordinary parlance of laymen it means 'children,' and only 'children.' When you talk of what 'issue a man has,' or what 'issue there has been of a marriage,' you mean 'children,' not 'grandchildren' or 'great-grandchildren.' But in the language of lawyers, and only in that language, it means 'descendants'; and in the case of Sibley v. Perry, 7 Ves. 524, Lord Eldon found ground for coming to the conclusion that the word 'issue' had, in the will before him, the laymen's meaning of 'children,' and not the lawyer's meaning of 'descendants.'"

In the will now before us I think there is some evidence that the testator intended to refer in the words "lawful issue" to the direct issue of her marriage, her own issue; in other words, as distinguished from the issue of such of her children as should be married and living at the time of her decease. The language employed in the direction to the executor to sell the real estate, and to invest the proceeds of such sales and the personal property in such manner as he should deem best for the interest of "my child or children," is surely some indication that she considered that the residuary provision was for the benefit of her then only child and such other children as might be thereafter born to her, and whose interests alone were to be considered in the investment and preservation of the property. At that time she was a very young woman, under 28 years of age, and her only child a mere baby, and it would be unusual, indeed, if in disposing of her property by will she then contemplated the necessity or propriety of providing for possible grandchildren at the expense of her own children, especially where the living parent of such grandchildren would be, as her child, an equable sharer in her bounty. Under the circumstances of this case, and in view of the fact that there were no children of deceased children, it is quite within the rule of Chwatal v. Schreiner, supra, to limit the meaning of the words "lawful issue"

to the words "my child or children" as used indiscriminately and convertibly by the testatrix, and as applied by her to her immediate "issue" as the intended residuary legatees and devisees.

It follows that the interlocutory judgment, in so far as appealed from, should be reversed, and judgment directed upon the referee's report in accordance with this opinion.

Interlocutory judgment, in so far as appealed from, reversed, with costs, and judgment directed upon the referee's report. All concur.