Matter of the Petition of HENRY C. VAN CLEEF, as Executor of the Will of JOHN S. VAN CLEEF, Deceased, to Render and Settle His Account of the Acts of Said JOHN S. VAN CLEEF, Deceased, as Trustee of the Trusts Created in and by the Will of DANIEL A. ROBBINS, Deceased.

(Surrogate's Court, Kings County, March, 1917.)

Wills — devise contained in — construction of — meaning of " survivors and survivor of my children and the lawful issue of such of my children as shall be dead."

   Where a devise to each of testator's four daughters of one-fourth of his estate provided that on the death of one without

issue her share should go to the " survivors and survivor of my children and the lawful issue of such of my children as shall be dead," and at the death of a daughter without issue testator had a daughter living and a son of a deceased daughter with issue and the issue of a deceased son of said daughter, the issue of the deceased daughter, though of two generations, take in equal division her share, one-half of the property devised, *per capita.*

PROCEEDING upon the judicial settlement of the account of an executor.

Cullen & Dykman (Francis L. Archer, of counsel), for accountant, and for Brooklyn Trust Company, as successor trustee of the trust created for the benefit of Caroline S. Dakin.

Harry A. Redmond, for Georgietta H. Maxfield.

Percy S. Dudley, for the Brooklyn Trust Company as guardian of Louis, Jean and Edna Van Cleef.

James M. Gray, for Marion Van Cleef Warner.

Charles J. McDermott, for Henry C. Van Cleef, as sole surviving executor of Julia Amelia Hicks, deceased.

D. A. Marsh, for Sally N. Gildersleeve, as administratrix of Frank Van Cleef, deceased.

KETCHAM, S. The executor of John S. Van Cleef is accounting for the acts of his decedent as trustee under the will of Daniel A. Robbins. This will nominated three trustees of whom Mr. John S. Van Cleef was the sole survivor.

The testator had four children, all daughters, who lived at the date of the will and survived his death.

To each of these daughters he devised one-fourth of his estate for her life, with remainders as will presently appear. These gifts were contained in four paragraphs identical in their language, except that in each one daughter only was named as the primary beneficiary. There was a subsequent paragraph qualifying these four and containing a devise in trust to pay the income in each instance to the daughter for her life.

One of the four paragraphs, under which distribution must now be made, is as follows:

" *Fifth.— I hereby give and bequeath unto my daughter, Caroline Eliza, for her sole and separate use, free from the control of any present or future husband, the net income of one quarter of my estate, for and during the full end and term of her natural life, and upon her death, I give devise and bequeath the said one quarter of my estate to the lawful issue of the said Caroline Eliza, and in default of such lawful issue, I give devise and bequeath the same to the survivors and survivor of my children, and the lawful issue of such of my children as shall be dead.*"

Since the testator's death, Caroline, named in the quotation, has died without issue. Two other daughters, Mary Augusta and Emma, have died. Mary Augusta left two sons, and one son has died leaving a child still living. The other lives, having three children. Emma has died without issue. The remaining daughter of the testator, Georgietta, survives.

Upon the decease of Caroline without issue it becomes necessary to apply to the circumstances detailed *supra* the phrase, "and in default of such lawful issue (of Caroline) I give, etc."

The conclusion has been reached that the will requires distribution, one-half to Georgietta, the surviving daughter, and one-half to the issue of Mary

Surrogate's Court, Kings County, March, 1917.   [Vol. 99.

Augusta, and that among themselves the issue of Mary Augusta, though of two generations, take *per capita*.

Any other interpretation, even though not forbidden by the will, would at least be contrary to the natural desire of the testator. While, of course, the task is to discover the intention which is shown in the will, inquiry as to the subjective purpose which a rational will maker would by presumption have indulged may greatly help the construction of the language which he employed. Among the circumstances and influences which shaped this will, and which now tend to its fair understanding, are the relations of the testator to his family, the wishes which, in reason, he must have maintained as to the effect of his last provision for their welfare, and the sense of justice which, shared by him with all mankind, may be presumed to have turned his mind from a fantastic disposition of his estate. None of these things can be permitted to overcome a distinct expression in the will but any of them may avail to resolve uncertainty.

Unless, therefore, the court is constrained to the contrary, it will be inevitably assumed that the decedent did not intend a capital division among all his surviving children and all the issue of his deceased children. This, under the circumstances presented, would result in the payment of the fund equally to the surviving child of the testator and the persons constituting the issue now living of his deceased child. Such issue are five and among them are a daughter, and a parent and his three children. In a *per capita* distribution the surviving daughter would take only one-sixth, while among the five, all of a stock standing toward the testator in the like relation as the living daughter, would receive five-sixths.

The interpretation which would permit such result would impose upon the testator's language another

and in a degree more abhorrent meaning.  If, at the time of distribution, the surviving child should herself have many children, then by the undoubted force of the will, none of the children of the surviving mother would take any share of the fund, while the children of another mother, and perhaps of two other mothers, would by the decease of their parent or parents take all but a paltry fraction.  Thus, if a surviving daughter with five children was confronted by ten children of her deceased sisters, the ten would absorb ten-elevenths of the fund while the surviving daughter would be cut down to one-eleventh, and her children, though not strangers to the testator's solicitude, would take nothing.

Again, before there is imposed upon the words in question an intention to produce a capital division, regard may perhaps be had to the possibility that upon the death without issue of the last daughter to die there might survive her one niece by one of her sisters and many children of her other two sisters.  A division by which one stock would receive one-fifth or one-tenth of the fund, while four-fifths or nine-tenths were accorded to stocks of equal degree, would have been intolerable to a normal mind if this possibility were appreciated.

The will fairly indicates that this testator's thoughts were strongly determined toward the recognition of the stocks of his offspring and the continuance so long as possible of each of these gifts in the line of the first taker.  Upon this instinct, the argument is based that the gifts upon the death without issue must have been intended *per stirpes*.  The force of the suggestion cannot be wholly denied but it is not controlling.

That the remainder now awaiting distribution was contingent may be asserted without discussion.  That the future gifts to issue are primarily to be held to

intend all descendants and to vest a capital share in each of them, not excluding a parent and his child, is fundamental. An exception, which has almost outgrown the stem upon which it was grafted, is that the principal rule " yields to a faint glimpse " of a different intention in the will. In the search for the " faint glimpse " judicial zeal may often have seen a light in the will which never else were seen on land or sea. Such occasional extravagance has been but an amiable perversion of a sound impulse, for the main rule has often destroyed the actual purpose of the testator.

Resentment of the present rules has taken form in an act now before the legislature providing that the word " issue " in cases now subject to these rules shall be construed to mean issue *per stirpes* unless a contrary intention appears in the will.

But the subordinate rule has been applied with just composure and restraint, and the " glimpse " fairly found in a recent case decisive of the present question. In *Matter of Farmers' Loan & Trust Company (Will of Wallach)*, 82 Misc. Rep. 330, the testator divided his estate into seven parts, corresponding to the number of his children. For each of the sons he created a trust of one of these parts until the beneficiary should attain the age of thirty years, when the principal was to be paid to him. For each of his daughters he devised the proceeds of a seventh part for her life. He then provided that upon the death of any daughter leaving issue the principal of the trust for her should be paid to such issue; that upon the death of a son within the age of thirty, leaving issue, the principal of the fund for such son should be " paid over and distributed among the issue equally share and share alike," and that upon the death of a son under the age of thirty years without issue the principal of the trust for him

should be " paid over and distributed among his (my) surviving children and the issue of any deceased child. There followed the paragraph construed in the case cited, viz.: " In the event of the death of any or either of my said daughters without issue, the share of such deceased daughter shall be distributed among my surviving children and the issue of any deceased child."

One of the daughters died without issue after the testator's death. Rehearsing these facts Mr. Surrogate Fowler says: " It is apparent from the will now before me that the testator had in mind primarily the interests of his own children as a class, and that each of them should benefit equally *inter se* in his estate. In the case of the death of any one of them, being a *cetstui que trust,* testator directed that the corpus of the trust estate should go to the issue of the one so dying, and failing such issue be distributed among his own surviving children and the issue of his deceased children."

The learned judge further holds that the portion falling to the respective issue of any deceased child of testator is to be distributed among such issue *per capita* and not *per stirpes.* The parallel of fact between the case at bar and the case cited is not broken unless it be by the provision there found that the issue designed to take with the surviving children are the issue of " any " deceased child.

It will be seen as this discussion proceeds that the gift in the present case " to the lawful issue of such as shall have died " was necessarily equivalent to a gift to the issue of any one of the testator's children who should have died at the time of distribution.

The determination in the case cited is well sustained by the authorities of England and of the states of this Union, and in their citation it will generally appear that a gift to " their issue," " their children," or

Surrogate's Court, Kings County, March, 1917.   [Vol. 99.

'' their descendants '' has been interpreted to mean a
gift to the children, issue or descendants of any single
person of the original class who shall have died.

In *Arrow* v. *Mellish,* 1 De Gex & Smale, 355, the gift
was for life to persons nominated with the addition
'' and at their deaths to go equally share and share
alike to their children.'' Bruce, V. C., said: '' In this
gift the words ' their children ' must mean their respec-
tive children.''

*Burrell* v. *Baskerfield,* 11 Beav. 525, required con-
struction of the words '' then the whole of the remain-
der of my property is to be divided share and share
alike to my aforesaid twelve first cousins and their
children.'' This provision supervened upon a gift of
the whole residue to the testator's wife for life.  Lord
Langdale, Master of the Rolls, confessed to misgivings
as to the share of the children of a first cousin who,
though named in the will, was then known to the testa-
tor to be dead, but he held, without uncertainty as to
the children of the other cousins, that if any cousins
died leaving children in the lifetime of the tenant for
life the vested interest in the cousin was divested and
the children of such deceased cousin became entitled by
way of substitution.

In *Wood* v. *Robertson,* 113 Ind. 323, there was a
devise to a wife for life, with the direction: '' At her
death it is my will that whatever remains of my estate
*   *   *   shall be equally divided among my children
then living and the descendants of such as may be dead,
share and share alike.'' Affirming that a division *per
stirpes* among the children and descendants was
intended, the court pursues the argument outlined by
this court *supra,* saying: '' If this be not true, then,
if there were four children and ten grandchildren, the
ten grandchildren, although all the children of one child
of the testator, would take more than twice as much as

the four children.'' The decision was that the beneficiaries took *per* stirpes and not *per capita,* viz., that the children living should share alike and that the children or descendants of the dead should take the share which would have fallen to the father or ancestor had he been alive.

The case last cited was followed by the same court in *Henry* v. *Thomas,* 118 Ind. 23. There the testatrix provided that her property should '' be divided equally between my brothers and sisters and the children of deceased brothers and sisters, and the brothers and sisters of P. J. B., her deceased husband, and the children of deceased brothers and sisters.'' The will contained no other provision to indicate the intention of the language quoted. The court found that the manifest effect was to give to the children of each deceased brother and sister of the testatrix and her husband the same share which their parent would have had.

In *Crosier* v. *Cundall,* 99 Ky. 202, the like construction was given to a will in which after a devise to two daughters '' to them and their heirs forever '' there was the provision in case of the death of either daughter without issue: '' Then such portion of my estate as is devised to them shall revert back to and be equally divided between the rest of my children and the children of those who are dead.''

*Gerrish* v. *Hinman,* 8 Ore. 348, concerns a gift over after a life estate in these words, unqualified by any other expression, '' I give  *  *  *  to each of my living children and the children of my deceased daughters alike '' and it is there held that the division intended was *per stirpes* among the testator's surviving children and the children of deceased daughters.

It is plain from these suggestions that when the words descriptive of one class of possible takers and

Surrogate's Court, Kings County, March, 1917.   [Vol. 99.

the words indicating their children, issue or descendants, as possible partakers, are coupled by " and " and not " or " the result must be the same as if the conjunction " or " were employed.  We must learn from them that the phrase now in dispute must be read as if it were " to the survivors and survivor of my children or (not ' and ') the lawful issue of such of my children as shall be dead."

It is strangely significant that the testator in the case at bar establishes by his will that by the word " and " when used by him throughout the instrument in any relation at all like that in which it appears in the phrase under construction he means to give it nothing but the sense of " or " and that in this particular phrase it has no other force.  When he means to give to his children, who survive, he speaks of " the survivors and survivor " of them.  This is four times repeated. When he makes his devise in trust it is to his executors and the " survivors and survivor of them."

In these five instances it is impossible to give to the word a conjunctive sense.  It gives forth no meaning unless it be to contrast and to disjoin the concept contained in the words with which it is associated.  There never could be together both survivors and a single survivor, and the language falls into delirium unless it intends the survivors, if any, " or " if none, the sole survivor.

Cases already cited indicate that even without a context imposing a distributive sense upon the word " and " in the relation which we are discussing, the alternative gift is to the issue, etc., of such one of the primary objects as shall have died.  Other cases where the word was " or " must control the present argument if it be accepted that in the will before us its equivalent was intended.  *Gowling* v. *Thompson,* 19 L. T. Rep. (N. S.) 242; *Matter of Sibley's Trusts,* 5 L. R. Ch. 494;

*Timins* v. *Stackhouse,* 27 Beav. 434; *Congreve* v. *Palmer,* 16 id. 435; *Guild* v. *Allen,* 28 R. I. 430.

The phrase " my children $\genfrac{}{}{0pt}{}{(\text{or})}{(\text{and})}$ the lawful issue of such of my children as shall be dead " cannot be distinguished from the words " my children $\genfrac{}{}{0pt}{}{(\text{or})}{(\text{and})}$ their issue." " Their issue " in the latter form is held to be distributive and to intend the issue of any one who shall die, in each of the following cases cited *supra:* *Arrow* v. *Mellish; Matter of Sibley's Trusts; Gowling* v. *Thompson; Congreve* v. *Palmer; Timins* v. *Stackhouse; Burrell* v. *Baskerfield; Guild* v. *Allen;* as well as *Matter of Hutchinsons' Trust,* 21 L. R. Ch. 811.

In the phrase now considered, " to the survivors of my children and the issue of such as shall be dead," there is a stronger flavor of distribution in the words " issue of such " than can be extracted from the words " their issue." It must be that the issue of such only as shall be dead is intended. It could not be the issue of such two or more of my children as shall be dead.

It has been gravely argued by judges that "their issue " and like phrases when applied to a group of brothers and sisters must mean the separate issue of any one or another brother or sister, for issue of which two of them would be parents is inconceivable. If then the gift be properly considered to be to the issue of any child deceased it is revealed as the thought of the testator that the subject of the gift is the share which a single parent would have taken if living. There is not only the gift in common fractional shares to all children, but there is also, in case of the death of one, a gift to the issue of that one by substitution of the share which otherwise would have belonged to his parents.

But the devise though *per stirpes* as between the sur-

Surrogate's Court, Kings County, March, 1917.   [Vol. 99.

viving child and the issue of each deceased child must vest among such issue *per capita. Matter of Farmers' Loan & Trust Company, supra; Gowling* v. *Thompson, supra; Matter of Sibley's Trusts, supra; Guild* v. *Allen, supra.* The decree should embody the conclusions herein stated.

Decreed accordingly.