Lea v. Lea.

ELIZABETH OVERTON LEA *v.* MRS. ELLA LEA *et al.* *

(*Nashville.*   December Term, 1921.)

1. **DEEDS.** Remainder to ''issue'' includes both children and grand-
children, all of whom take per capita.

Under a deed giving land to grantor's son for life and providing that
on his death it should pass to and vest in his issue, the term
"issue" includes grandchildren as well as children, and the chil-
dren and grandchildren take *per capita*, unless a contrary inten-
tion can be found in the instrument itself. (*Post, pp.* 697-706.)

Cases cited and approved: Rembert v. Vetoe, 89 S. C., 198; Rhode
Island Hospital Co., Executor, etc. v., Samuel W. Bridgham, 42
R. I., 161; Pearce v. Rickard, 18 R. I., 142; Petry v. Petry, 186
App. Div., 738; Ferrer v. Pyne, 81 N. Y., 284; Vincent v. New-
house, 83 N. Y., 513; Palmer v. Horn, 84 N. Y., 519; Drake v.
Drake, 134 N. Y., 220; Soper v. Brown, 136 N. Y., 244; Chwatal
v. Schreiner, 148 N. Y., 683; N. Y., L. Ins. Co. & T. Co. v. Viele,
161 N. Y., 19; Re Union Trust Co., 170 App. Div., 176; Emmet
v. Emmet, 67 App. Div., 183; Re Van Cleef, 99 Misc. Rep., 405;
Wood v. Robertson, 113 Ind., 323; Crozier v. Cundall, 99 Ky., 207;
Gerrish v. Hinman, 8 Or., 349; Burrell v. Baskerfield, 11 Beav.,
525; Thomas v. Safe Deposit, etc., Co., 73 Md., 451; Dexter v.
Inches, 147 Mass., 327; Jackson v. Jackson, 153 Mass., 374; Man-
ning v. Manning, 229 Mass., 527; Scott's Estate, 163 Pa., 169.

Cases cited and distinguished: Ridley v. McPherson, 100 Tenn., 402;
Freeman v. Parsley, 3 Ves. Rep., 421; Chancellor v. Chancellor,
32 L. J. Ch., 17; Fox v. Fox, 102 Tenn., 77; Rivenett v. Bourquin,
53 Mich., 14; Matter of Farmers' Loan & Trust Co., 213 N. Y., 168;
Petry v. Petry, 186 App. Div., 738; Brisbin v. Huntington, 128
Iowa, 166.

---

*For authorities passing on the meaning of term "issue" where
used as a word of purchase, see note in 2 A. L. R., 930.

2. **TRUST.** Under deed in trust to grantee for his own benefit for
life with remainder to his issue, trust estate not contemplated
beyond grantee's life.

Under a 'deed conveying land to the grantor's son, "his heirs, etc.,
as trustee," to have and to hold to the son, ''his heirs, as trustee,''
in fee simple, with a further provision that the son was to hold
the land for his own use and benefit for life, and that on his
death it was to pass to his issue, no trust estate ·beyond the life
of the son was contemplated; there being no duties for a trustee
to perform, no provision for a successor to the son as trustee,
and nothing to vest in a trustee. (*Post, p.* 706.)

3. **DEEDS.** Under remainder to ''issue'' children and grandchildren
held not to take per capita in view of other provisions.

A deed conveyed land to the grantor's son, "his heirs, etc., as trus-
tee," to have and to hold to the son "his heirs, as trustee, . . .
in fee simple forever," but further provided that the son was to
hold the land for his own use and benefit for his life, that on
his death it was to vest in his issue, and that, if he died without
issue or issue should become extinct within twenty-one years after
his death, the land should revert. *Held* that, the conveyance was
to the son as trustee and his heirs in fee simple (or fee determin-
able), and, a subsequent provision limiting the son's estate to a
life estate, the word "issue" merely limited the heirs to descending
heirs and did not give the property to the son's children and grand-
children *per capita.* (*Post, pp.* 706-708.)

4. **DEEDS.** Intention controls; court should consider surrounding
circumstances.

In the interpretation of deeds the controlling rule is the intention
of the grantor, and in arriving at such intention the court should
put itself as near as possible in the place of the grantor and may
consider the circumstances surrounding him, the state and con-
dition of his property, his family, and the objects of his bounty,
(*Post, p.* 708.)

Case cited and approved: Hottell v. Browder, 81 Tenn., 676.

---

Lea v. Lea.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—
Hon. James B. Newman, Chancellor.

Pitts & McConnico, O. M. Golden, Henry E. Colton,
and Col. Luke Lea, for appellants.

R. B. C. Howell, W. P. Cooper, Keeble & Seay and L.
J. Pardue, for appellee.

Mr. Justice McKinney delivered the opinion of the
Court.

This is a partition suit.   The controversy arises over
the construction of the following deed, to-wit:

"Know all men by these presents that we, John M. Lea
and Elizabeth B. Lea, wife of John M. Lea, for the con-
sideration of one dollar, do hereby give, grant, transfer,
and convey unto Overton Lea, his heirs, etc., as trustee
for the uses, trusts, limitations, and with the powers, etc.,
as will be hereinafter declared, all our right, title, and
claim to the following lots and real estate situated in
Memphis, Shelby county, Tennessee, namely:  .  .  .  .

"To have and to hold the same, with all appurtenances
thereto belonging, unto said Overton Lea, his heirs, as
trustee, as an indefeasible inheritance in fee simple for-
ever, and the title to which we agree to warrant and de-
fend against ourselves, our heirs and assigns.

"The uses, limitations, trusts, and powers are, that is
to say, the said Overton Lea may have and hold said real

estate for his own use and benefit for and during the period of his natural life; and on his death said real estate is to pass to and vest in his issue; but if said Overton Lea should die without issue or if he should die leaving issue, and said issue should become extinct within the period of twenty-one years from the date of the death of said Overton Lea, the said real estate is to revert and pass to and vest in the undersigned Elizabeth Lea, her heirs and assigns.

"Notwithstanding said trusts, limitations, etc., the said Overton Lea is authorized and empowered to sell all or any portion of said real estate, the proceeds of sale to be by him reinvested in other real estate, the deed or deeds therefor to be taken in his name as trustee, the provisions of which as to trusts, limitations, etc., are to be accordant or identical with those contained in this instrument; but the understanding is distinct that in case of any sale or sales the purchaser or purchasers are not to be bound to see to the application of the purchase money, that duty resting solely upon said trustee, in whom we repose entire confidence.

"Witness our hands and seals March 1, 1881.

"JOHN M. LEA.  [Seal.]

"ELIZABETH B. LEA.   [Seal.]"

Overton Lea died testate in 1912, survived by three children, viz. complainant, Elizabeth Overton Lea, and the defendants Luke Lea and Ella Lea Robertson, and by six grandchildren, to-wit, Luke Lea, Jr., and Percy W. Lea, children of his son Luke Lea, and Eva Robertson, Ella Lea Robertson, Arthur Robertson, and Laura Lea Robertson, children of his daughter Laura Lea Robertson.

Mrs. Elizabeth B Lea died in 1897, and by her will devised her reversionary interest to the property in question

to her husband, John M Lea, and he in turn conveyed same by deed dated December 8, 1897, to his son, Overton Lea.

Overton Lea devised said interest to his wife, Ella Lea, and she conveyed same by deed to her three children, Elizabeth Overton, Lea, Luke Lea, and Laura Lea Robertson.

Said three children being advised that they owned the lands conveyed in said deed of March 1, 1881, in fee simple as tenants in common, executed partition deeds *inter sese* in November, 1912, to a portion of said property, but not including the lot of land sought to be partitioned herein.

Defendants Luke Lea and Laura Lea Robertson conveyed their alleged two-thirds interest in said lot of land by deed or deeds, and same is now owned by the defendant Guaranty Title Trust Company, and the bill alleges that complainant owns a one-third and the Guaranty Title Trust Company a two-thirds undivided interest in the lot of land sought to be partitioned herein. The other defendants, who are the children and grandchildren of Overton Lea, were made parties to the suit in order that the title to said property, which was being questioned, might be adjudicated.

It will be observed that the deed of March 1, 1881, provides that upon the death of Overton Lea the title to said property shall "pass to and vest in his issue." It may as well be stated in the outset that the term "issue" in its strict signification includes grandchildren as well as children. It was so expressly held in *Ridley* v. *McPherson*, 100 Tenn., 402, 43 S. W., 772. And in 2 A. L. R., 931, the annotator says:

"The term 'issue,' according to the almost consensus of opinion, includes descendants of every degree and is to be given that meaning in the absence of explanatory context."

The question here involved. is did the grantors intend that the "issue" of their son Overton Lea should take the property in question *per stirpes* or *per capita?* In other words, was it their purpose for the six grandchildren to take equally with and in opposition to their living parents, or were they only to take by way of substitution in event their parents were dead?

From the record it appears that the grantors, John M. Lea and Elizabeth B. Lea, had only two children, and on the same day that they executed said deed to their son Overton Lea they also executed a deed to their other son, Robert B. Lea, to certain other property, the conditions and limitations in both deeds being the same.

When the deed in question was executed on March 1, 1881, Overton Lea had three living children, to-wit, defendants Luke Lea and Laura Lea Robertson, and another son, Overton Lea, Jr., who subsequently died unmarried, intestate, and without issue, and within the lifetime of his father. Complainant, Elizabeth Overton Lea, was born subsequent to said date.

It is inferable from the record that at said date the children of Overton Lea were young, and that none of them had children. It further appears that there was not at that time, nor has there ever been, any deceased child of Overton Lea who left surviving issue.

The authorities upon this question are without limit, and the views of the various courts are not altogether harmonious, but it can be stated that, as a general rule, the courts are reluctant to apply the *per capita* doctrine for three reasons as we gather from the decisions, viz.:

(1) Because contrary to the real intention of the grantor.

(2) Because to do so often works hardship and injustice.

(3) Because in conflict with the laws of descent and distribution.

In *Ridley* v. *McPherson,* supra, it is said: "Mr. Redfield, in his work on Wills, vol. 11, p. 363, says, in substance, that the real intention of the grantor in using the word should be ascertained and followed, and he is of opinion that not one grantor in a thousand would suppose that by using such a word he would be dividing up his estate among all his descendants who might be living at the time of distribution, in such manner as to permit two or three generations—parents and their children and grandchildren—to share concurrently and *per capita* equally as between themselves.

"It was his opinion that most testators employ the term in the sense of descending heirs, and that it is most consistent with the testator's intention to hold that the children alive at the time of distribution are intended to take equally, to the exclusion of more remote descendants, unless the latter are an issue of a deceased child, in which case they should take the child's share as representing their parent."

In *Freeman* v. *Parsley,* 3 Ves. Rep. (Eng. High Court of Chancery), p. 421, the opinion of the Lord Chancellor is as follows:

"In the common use of language as well as the application of the word 'issue' in wills and settlements it means all indefinitely. I very strongly suspect that in applying that to this will I am not acting according to the intention; but I do not know what enables me to control it. If a medium could be found between a total exclusion of the

grandchildren and the admission of them to share with the parents, the nearest objects of the testator, that would be nearer the intention; as by letting in those whose parents were deceased to take the share, the parents, if living, would have taken; but that construction would be setting up my own conjecture against the obvious sense of the words. When you put the question whether he meant all these grandchildren should take with their parents, I think he would say he did not; yet if he was asked the other way, if it should go to the survivor while there was a descendant, I am equally clear he would not have given it to the survivor. They are therefore all entitled."

In the case of *Chancellor* v. *Chancellor,* 32 L. J. Ch., 17, 7 L. T., 307, 62 Eng. Rep. Full Reprint, 595, it is said:

"It is certainly not very probable, *a priori,* that a testator should intend that parents and children and grandchildren should take altogether as tenants in common *per capita;* and the court will not very willingly adopt such a construction; but if such an intention is clearly expressed, and there is nothing in the will to control it, and to show that such was not his intention, that construction must of course prevail."

Many cases could be cited to the same effect.

In a number of cases which we have examined it is stated that a *per capita* construction results in inequality and injustice.

In *Fox* v. *Fox,* 102 Tenn., 77, 50 S. W., 765, this court said: "It is a rule well established that in the construction of wills the law favors the heir, and that the property shall, as near as may be consistent with the will, follow the laws of descent and distribution."

And in *Rivenett* v. *Bourquin*, 53 Mich., 14, 18 N. W., 539, the court said: "The law favors that construction of a will which will make a distribution as nearly conformed to the general rule of inheritance as the language will permit."

It can be stated that the tendency of the modern decisions is to get away from the *per capita* rule. In the three latest decisions to which we have been cited the courts applied the stirpitual rule, and in each of those cases the problem was solved in a different way.

In the first case of *Rembert* v. *Vetoe*, 89 S. C., 198, 71 S. E., 959, 2 A. L. R., 918, the court held the word "issue" equivalent to "heirs of the body," and then resorted to the statute of distribution for the purpose of ascertaining who might answer to such description.

In the second case of *Rhode Island Hospital Co., Executor, etc.,* v. *Samuel W. Bridgham,* 42 R. I., 161, 106 Atl., 149, 5 A. L. R., 185, the meaning of the word "issue" was involved. We quote from the statement of the annotator, following the opinion (p. 195), as follows:

"As shown by the annotation in 2 A. L. R., 930, on the question above stated, to which the present note is supplementary, the reported case (*Rhode Island Hospital Trust Co.* v. *Bridgham, ante* 185) is in accord with the weight of authority in holding that the term 'issue,' where used as a word of purchase, includes descendants of every degree, and is to be given that meaning in the absence of an explanatory context showing that it was used in a restricted sense as meaning children only. But in departing from the rule followed in the earlier case of *Pearce* v. *Rickard* (1893), 18 R. I., 142, 19 L. R. A., 472, 49 Am. St. Rep., 755, 26 Atl., 38, and adopting instead the

Massachusetts rule that the word 'issue,' where its meaning is unrestricted by the context, will be construed as importing representation, it is at variance with the courts of other States (see 2 A. L. R., pp. 963, 964), others of whom, it is to be hoped, will also give their adherence to the Massachusetts rule.

"The tendency of the courts to break away from the rule that under a gift to 'issue,' where the word 'issue' is without any terms in the context to qualify its meaning, the children of the ancestor and the issue of such children, although the parent is living, as well as the issue of deceased children, take in equal shares *per capita,* and not *per stirpes,* as primary objects of the disposition, is also evidence by *Petry* v. *Petry* (1919), 186 App. Div., 738, 175 N. Y. Supp., 30, in which the court, although feeling itself constrained to follow such rule, expressed the opinion that such construction did violence to the intention of the testator."

The annotator then quotes extensively from the opinion in *Petry* v. *Petry,* 186 App. Div., 738, 175 N. Y. Supp., 30 (which is the latest decision upon this question), and in which opinion the writer stated that, feeling the *per capita* rule to be fallacious, he had read the English cases for the purpose of discovering the origin and reason of the rule, and the writer concluded the opinion of the court with the following statement:

"We have continued a definition of the word 'issue' which the courts of England adopted with reluctance, and only because their laws would not permit an avenue of escape, withut doing substantial injustice, when a definition according to our own laws of descent and distribution would have furnished the very avenue of escape that the English

Lea v. Lea.

judges sought, but could not find, in their law. For these reasons, if I were not controlled by the decisions of the court of appeals, I would construe the word 'issue,' when not controlled by the context of the will, to mean lineal descendants capable of inheriting or succeeding to the property under our Decedent Estate Law, and that the issue take in the manner therein provided; when of equal degree, *per capita;* when of unequal degree, the remoter degree take by representation the share that would have fallen to their ancestor in the other class, if living; within each class the distribution *inter sese* to be *per capita.*"

The third case referred to is that of *Matter of Farmers' Loan & Trust Co.,* 213 N. Y., 168, 107 N. E., 340, 2 A. L. R., 910, in which the court said:

"The presumption in this State favors a *per capita* distribution.    .   .   .   But the presumption yields to 'a very faint glimpse of a different intention.' "

This "faint glimpse" or "slight indication" doctrine is accepted by most of the courts, and while it is the exception to the rule, as stated in *Petry* v. *Petry,* supra, the exception to the rule seems to have a more general application than the rule.

A careful reading of the opinion in the *Matter of Farmers' Loan & Trust Co.,* supra, will demonstrate the extent to which courts will go to obtain a "faint glimpse" of a stirpital intent.

In 30 Am. & Eng. Ency. of Law (2 Ed.), 733, the author says: "The presumption in favor of a *per capita* distribution yields readily in favor of a faint indication of an intention of the testator that the distribution shall be *per stirpes.* Thus the presumption in favor of a *per capita* distribution arising from the use of words importing equal

division will yield to a contrary intention discoverable from the will."

In *Brisbin* v. *Huntington,* 128 Iowa, 166, 103 N. W., 144, 5 Ann. Cas., 931, in discussing the meaning of the word "issue," the court uses this language:

"This appeal does not seem to have been very productive in the way of results, though in England, as well as in this country, there is a strong tendency against the broad construction approved in earlier cases, and slight indications are seized upon as manifesting an intention on the part of the testator to limit the meaning of the term."

Some of the other cases adopting this rule are as follows: *Ferrer* v. *Pyne,* 81 N. Y., 284; *Vincent* v. *Newhouse,* 83 N. Y., 513; *Palmer* v. *Horn,* 84 N. Y., 519; *Drake* v. *Drake,* 134 N. Y., 220, 32 N. E., 114, 17 L. R. A., 664; *Soper* v. *Brown,* 136 N. Y., 244, 32 N. E., 768, 32 Am. St. Rep., 731; *Chwatal* v. *Schreiner,* 148 N. Y., 683, 43 N. E., 166; *New York L. Ins. & T. Co.* v. *Viele,* 161 N. Y., 19, 55 N. E., 311, 76 Am. St. Rep., 238; *Re Farmers' Loan & Trust Co.,* supra; *Re Union Trust Co.,* 170 App. Div., 176, 156 N. Y. Supp., 32; *Emmett* v. *Emmett,* 67 App. Div., 183, 73 N. Y. Supp., 614; *Re Van Cleef,* 99 Misc. Rep., 405, 163 N. Y. Supp., 1098; *Wood* v. *Robertson,* 113 Ind., 323, 15 N. E., 457; *Crozier* v. *Cundall,* 99 Ky., 207, 35 S. W., 546; *Gerrish* v. *Hinman,* 8 Or., 349; *Burrell* v. *Baskerfield,* 11 Beav., 525; *Rivenett* v. *Bourquin,* supra; *Brisbin* v. *Huntington,* supra; *Thomas* v. *Safe Deposit, etc., Co.,* 73 Md., 451, 21 Atl., 367, 23 Atl., 3; *Dexter* v. *Inches,* 147 Mass., 327, 17 N. E., 551; *Jackson* v. *Jackson,* 153 Mass., 374, 26 N. E., 1112, 11 L. R. A., 305, 25 Am. St. Rep., 643; *Manning* v. *Manning,* 229 Mass., 527, 118 N. E., 676; *Scott's Estate,* 163 Pa., 169, 29 Atl., 877.

This "faint glimpse" rule was to some extent, at least, recognized by this court in *Ridley* v. *McPherson,* supra. The syllabus fairly states the holding of the court, and is as follows:

"Under a deed vesting the remainder interest in lands in the 'issue' of the life tenant 'living at her death,' the grandchildren take concurrently with the children of the life tenant, and all take *per capita* in the absence of other controlling provision in the deed."

The court, in its opinion, on page 408 of 100 Tenn., on page 773 of 43 S. W., said:

"There is absolutely nothing in the context of this instrument to show that the word 'issue' was intended to have any other than its proper legal signification. If there were such indications in the context, they would furnish a good ground for giving the word a different meaning. 11 Am. & Eng. Enc. L., 872, note 1. But in the absence of such indication the word must receive its proper meaning."

This court in that case, in effect, repudiated the Massachusetts rule in the following language found on page 409 of 100 Tenn., on page 774 of 43 S. W., to-wit:

"The gifts, in this case, to the issue of the life tenant cannot be considered as substitutional, so that such issue must take *per stirpes.* A gift to issue is substitutional when the share which the issue are to take is by a prior clause given to the parent of such issue, but it is an original gift when not so expressed to be given to the parent of such issue, and the gift in this case falls under the latter head or class. 11 Am. & Eng. Enc. L., 871, note."

Therefore, upon the authority of the foregoing case, the *per capita* rule should be applied here unless a contrary intention can be found in the instrument itself.

145 Tenn.—45

The court of civil appeals recognized the rule which we have been discussing, but was unable to find anything in the context to indicate that the grantors' intention was for the "issue" to take *per stirpes*.

Upon behalf of the complainant it is insisted that the context shows such intention in the use of the words "his heirs."

In the granting clause of the deed of March 1, 1881, it is stated, "do convey unto Overton Lea, his heirs, etc., as trustee."

In the *habendum* clause to said deed the recital is to have and to hold unto said "Overton Lea, his heirs, as trustee, as an indefeasible inheritance in fee simple forever."

What did the grantors mean by the use of the words "his heirs"?

It is apparent that grantors did not contemplate a trust estate beyond the life of Overton Lea: First, because no provision is made in the deed for a trustee to succeed him; second, if a trustee were appointed, there are no duties specified in the deed for him to perform; third, upon the death of the life tenant, Overton Lea, the estate "is to vest in his issue." Consequently there is nothing to vest in a trustee.

If you treat the words "his heirs" as surplusage and meaningless, you have the grantors conveying the property to their son, as trustee, "in fee simple forever," when it is manifest that they intended that he should hold it as trustee only during his life. It is therefore obvious to us that they had a purpose in using the words "his heirs;" their intention being that their son, as trustee, for life, and "his heirs" should take said property as an "indefeasible inheritance in fee simple forever." The mean-

ing of the grantors is better obtained by transposing the phrase "to Overton Lea, his heirs, etc., as trustee," so as to read "unto Overton Lea, as trustee, and his heirs, etc."

It thus appears both from the granting clause and the *habendum* clause that the gift was to Overton Lea and his heirs in fee simple forever.

But by subsequent provisions found in the deed the grantors saw fit to limit the gift to Overton Lea to a life estate, and his heirs were limited to descending heirs by the use of the word "issue." In using the word "issue" the grantors simply intended to say that the heirs of Overton Lea, who were to take said property upon his death, were his descending heirs, and under the statute of descent such heirs would take *per stirpes,* and not *per capita.* The grantors having twice stated in said instrument that the gift was to "his heirs," it is not our opinion that by the subsequent use of the word "issue" they intended that these remaindermen should take *per capita,* and not *per stirpes.* In other words, in granting the property to "his heirs," they, of course, knew that such heirs would take *per stirpes,* and by the subsequent use of the word "issue," in our opinion, they did not intend to change the manner by which said heirs should take, but simply intended to limit those who should take to descending heirs.

It further appears that later on the deed was still further restricted, and, taking the deed as a whole, it may be that the recitation that the gift "to Overton Lea and his heirs as an indefeasible inheritance in fee simple forever" is an inaccuracy, and that such taking, instead of being a fee simple, was a fee determinable. Or the conveyors may have purposely conveyed it as a fee-simple estate and subsequently concluded to reduce the estate granted. This

is not very material in connection with the question under consideration, viz. that the word "issue" was so used as to limit the heirs who were to take to descending heirs, and that such heirs were to take *per stirpes*.

There are other circumstances which suggest stirpital intent. At the time said deed was executed there were no children of a deceased child, which of itself was held sufficient to show an intention that the "issue" should take *per stirpes* in *Emmet* v. *Emmet,* supra.

It further appears from the record without controversy and in a manner that cannot be questioned that for three generations, including the grantors under the deed of March 1, 1881, it was intended and believed that the children of Overton Lea surviving him would take the gift equally and *per stirpes*.

After all, in the interpretation of deeds, the cardinal rule which should control the court is the intention of the grantor, and in arriving at such intention the court should put itself as near as possible in the place of the grantor and may consider the circumstances surrounding him, the state and condition of his property, as well as his family, and the objects of his bounty. *Hottell* v. *Browder,* 13 Lea, 676.

Upon the whole, we are clearly of the opinion that the grantors in this cause intended for the "issue" of their son Overton Lea to take the property granted *per stirpes* and not *per capita.* This result meets the equities of the cause, is in line with our statute of descent, and accords with the views which this family have entertained all these years. This was the conclusion reached by the chancellor.

It results that the decree of the court of civil appeals will be reversed, and that of the chancellor affirmed, and the cause will be remanded for further proceedings.