New York Life Insurance and Trust Company, as Trustee of a Trust Created under the Will of Thomas Morrell, Deceased, for the Benefit of Julia Blanche Peck, Deceased, Plaintiff, *v*. Louise Gordon Phelps, Howard M. Peck, Dudley F. Phelps, Jr., Blanche Phelps. Lander Prince Phelps and New York Life Insurance and Trust Company, as Executor of the Last Will and Testament of Julia Blanche Peck, Deceased, Defendants.

(Supreme Court, New York Special Term, April, 1919.)

Wills — construction of — termination of trusts — devise to executors in trust — when "issue" means "children."

Two pieces of real estate devised to executors in trust, to collect the income after certain payments therefrom, were directed to be divided into as many equal shares as testator should have children born to him and his wife and to hold one share in trust for each child and to pay over to said children respectively the net income of said shares for their respective lives for their support and maintenance "and upon the death of each child leaving lawful issue him or her surviving his or her share in the said trust estate shall go to and become vested in said issue forever." If at the death of testator any of his said children should have died leaving lawful issue, the share which under the foregoing provision would have been held in trust for the parent if surviving the testator "shall go to and become vested in such issue share and share alike to him, her or them and to his, her or their heirs and assigns forever." In the event of the death of any of the children of testator without lawful issue him or them surviving the share of which, under the said foregoing provision would have been held in trust for the one so dying, "shall go to and become vested in the survivors or survivor of my said children * * * share and share alike *per stirpes* and not *per capita.*" The testator left him surviving eleven children besides sisters, nephews, nieces and grandchildren, and thereafter one of his daughters died leaving her surviving a son and a daughter and her three

children. In an action for the construction of the will, *held*, that the word "issue" as used by the testator was to be confined to "children" and that the capital of the trust which terminated upon the death of said daughter of testator should be divided between her son and her daughter in equal shares.

Action for the construction of a will.

Emmet & Parish, for plaintiff.

Henry C. Quinby, for defendant Peck.

Graham & L'Amoreaux (George S. Graham and John B. Knox, of counsel), for defendant Phelps.

Erlanger, J. On April 10, 1883, Thomas Morrell died in New York county, leaving a will and four codicils which were thereafter probated in said county. He appointed three executors who, since they qualified, have either died or resigned, and, on May 10, 1910, the plaintiff was substituted as trustee of the unexpired trusts created by the decedent in his third codicil for the benefit of his children of whom Julia Blanche Peck was one. She died on September 8, 1918, leaving her surviving two children, a daughter Louise Gordon Phelps, a son Howard M. Peck and three grandchildren, Dudley F. Phelps, Jr., aged nine years, Blanche Phelps, aged five and Lander Prince Phelps, aged two years, the children of her said daughter Louise Gordon Phelps. By the death of Mrs. Peck, the trust created for her benefit terminated. The plaintiff is prepared to distribute the share so held in trust for her but it is uncertain whether the whole of the capital is to go in equal proportions to her said two children *per stirpes* or whether it should be divided among her said two children and her three

grandchildren *per capita.* Because of this doubt, this action was brought to procure a construction of the will and for instructions to the plaintiff in respect of the distribution of the fund in question; it is also asked that its account be settled and allowed. The three infant defendants are represented by their father as guardian *ad litem* who has served the usual infants' answer. The defendant, Louise Gordon Phelps, the mother of the three infants, by her answer, admits all the allegations of the complaint, and her brother Howard M. Peck, by his answer, alleges that there is neither doubt nor uncertainty with regard to the true meaning of the will and that by its terms, upon the death of his mother Julia Blanche Peck, the fund in question was to be equally divided between himself and his sister. The case comes before the court merely upon the will and pleadings. From the will it appears that the testator had eleven children, in addition to sisters, nephews, nieces and grandchildren. After making his will, codicils thereto were added from time to time. The clause of the will that has given rise to this controversy appears in the third codicil and by it the testator devised to his executors, the survivor of them and their successors or successor, two pieces of real estate, in trust, to collect the income therefrom and, after making the payments specified, he directed that the real estate be divided into as many equal shares as he shall have children born to him and his wife, Julia Abbey, and to hold one of said shares in trust for each of his children so born and to pay over to them respectively the net income of the said shares for their respective lives for their support and maintenance " and upon the death of each child leaving lawful issue him or her surviving, his or her share in the said trust estate shall go to and become vested in said issue forever to whom I do hereby give, devise and bequeath the same.

**44**

Supreme Court, April, 1919. [Vol. 106.

" If at the time of my decease any or either of my said children born of my said wife, Julia Abbey, shall have died leaving lawful issue surviving, the share which under the foregoing provisions would have been held in trust for the parent if surviving me shall go to and become vested in such issue, share and share alike to him, her or them and to his, her or their heirs and assigns forever, to whom I do hereby give, devise and bequeath the same.

" In case of the death of any or either of my said children born of my said wife Julia Abbey, without leaving lawful issue him, her or them surviving, the share of which under the foregoing provision would have been held in trust for the one so dying shall go to and become vested in the survivors or survivor of my said children born of my said wife Julia Abbey, share and share alike to them, him or her and to their, his or her issue, share and share alike, *per stirpes* and not *per capita* to whom I do hereby give, devise and bequeath the same."

Does the word " issue " as used in the above clause limit the gift in the event of the death of either of the life beneficiaries to the children born to each or does it include descendants generally? On the interpretation of this word much depends. If it is confined to children only, then the capital of the expired trust must be divided into two equal parts, but if it means descendants, then the division would be in the proportion of one-fifth to Howard M. Peck and four-fifths to Louise Gordon Phelps and her three infant children. The word has been prolific of juridical thought and opinion, not alone in our state, but elsewhere. In determining a designated class in whom the gift is to vest after the expiration of the life estate, the testator's intention is the controlling factor, and that intention is to be ascertained from the context of the entire

will or such extrinsic circumstances as can be considered.

" The presumption in this state favors a *per capita* distribution but the presumption yields to ' a very faint glimpse of a different intention.' " *Matter of Farmers Loan & Trust Co.*, 213 N. Y. 168. It seems to me that the will and codicils postulate in clause after clause that the primary objects of the testator's benefactions were the children born of his wife Julia Abbey, and upon the death of either, that then the children of the one so dying were to take the parent's share. In the clause above quoted though the words *per stirpes* are used but once and that at the end, it points unmistakably to an intent that the issue so described should take by representation. Why then ascribe to him an intention to include descendants generally in respect of the first two sentences of the disputed clause, when he expressly excluded them in the final words of the gift? The briefest analysis of this clause serves to demonstrate the point. He used the word " issue " in his different dispositions but he clearly described whom he meant when he particularly specified that if any of his said children *died leaving no issue* then the share which would have been held in trust for the one so dying was to vest in the surviving children, *i. e.*, those born to his said wife Julia Abbey, share and share alike or to his or their issue in equal shares *per stirpes* and not *per capita*. Here the stirpital distribution is clearly and definitely shown. If now we examine other parts of the will, abundant evidence is furnished that the class who were to enjoy the gift over in every instance were the same as those specified in this contested clause. None of the paragraphs in either the will or codicils are numbered, and in that situation to avoid unnecessary prolixity pages only can be referred to. On page 13 of the main will

described as his residuary clause, he mentions his eleven children by name and then declares that none of the bequests shall lapse by reason of the death of any of them " who may leave issue before my decease " but in case of such pre-decease the estate so bequeathed shall go to the issue of such child " so dying before me *per stirpes* and not *per capita.*" On page 19 is found a similar provision and there he declares that if any of his children born to his wife Julia Abbey shall die leaving issue, then the latter were designated to take the parent's share *per stirpes* and not *per capita.* Like provisions are found on pages 22, 24, 25 and 28. The clause in question has many features similar to the one in the will which was before the court for construction in *Matter of Farmers Loan & Trust Co., supra.* Other authorities which support the contention of the defendant Howard M. Peck are: *Palmer* v. *Horn,* 84 N. Y. 516; *Emmet* v. *Emmet,* 67 App. Div. 183; *Matter of Tenney,* 104 id. 290; *New York Life Ins. & Trust Co.* v. *Wells,* 173 id. 769. The many cases cited on behalf of the infants in support of their contention that the word " issue " means descendants, prove the rule that the word is elastic and has resulted in much literature on both sides of the question. The uniformity in drafting wills with limitations over after the life estate shall have been spent has caused numberless contests and contrariety of opinion. Differences in adjudicated cases have been pointed out repeatedly where descendants generally have either been included in a class, or excluded. After all, the particular will on trial is the primal consideration and the intention of the testator sought for and upheld. In my opinion the three children of Mrs. Phelps are excluded from the gift and the trust estate held for the life of Julia Blanche Peck should be divided between Howard M. Peck,

her son, and Louise Gordon Phelps her daughter in equal shares. If the account to be taken is not the subject of dispute I will pass upon it. On the other hand if any contest is to be made in respect of it and exceptions filed thereto, the decree should be interlocutory and provide for a reference. Otherwise a final judgment will be entered.

Judgment accordingly.